In the Matter of the Claim of HENRY ROETTINGER, Respondent, *v.* GREAT ATLANTIC & PACIFIC TEA COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, July 26, 1962.

*Terhune, Gibbons & Mulvehill* (*Urban S. Mulvehill* and *Gerard L. Peace* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Sylvia Livingston* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Seymour M. Rowen* for claimant-respondent.

GIBSON, J. The employer and its carrier appeal from a decision and award of the Workmen's Compensation Board for disability due to upper respiratory disease resulting from claimant's exposure to cold in the course of his 15 years' employment by appellant employer as a butcher.

Claimant testified that he had no difficulty with his chest or with his breathing for many years after this employment commenced or until two or three years after he began to work some hours daily in the so-called icebox and that after the onset of his chest difficulties they gradually worsened over some years until he had an attack at home, after working that day, and was unable to work again.

Claimant's medical expert diagnosed chronic lung disease, the " specific type " being " that of pulmonary fibrosis, pulmonary emphysema, cystic lung disease ", with chronic bronchitis and bronchospasm, resulting in permanent total disability due to pulmonary insufficiency; the doctor finding causal relation in that claimant's " repeated exposures to the refrigerated air of the icebox, as well as to the cold air of the packing room, produced a state of more or less chronic bronchospasm "; which condition, in turn, produced infections, episodes of bronchopneumonia, of bronchitis and of lobar pneumonia; the infectious process, with its concomitants, then resulting in the pulmonary crippling which the doctor found. Causal relation was further emphasized by this physician's testimony that some seven months before his complete disablement, claimant, after two hours in the icebox, sustained a " typical " bronchospastic episode " clearly attributable " to his work in the icebox, this being followed by " similar recurrent attacks " compelling him to leave his work for intervals of a few days or a week, and " the long-term cumulative effect " being " his present status " of disablement. The board was, of course, entitled to accept this opinion of causation and to reject such of the testimony of appellants' medical witnesses as was at variance with it. Although the physician who examined for appellants denied causal relation, some support for claimant's theory of causation may be found in the testimony of the other experts called by appellants. Thus, an impartial specialist, testifying as appellants' witness, after discussing the general or popular contention that exposure to chill may precipitate a respiratory illness, said that " the clinical impression is that it may be so, but we have no scientific proof "; that " we are willing to say that it is possible that it may have had an effect "; which he would, however, consider of " minor degree ". Another expert, called by appellants, said that " infection plays a very strong etiologic role here * * * I think to a large extent these patients suffer from repeated infections and that is the cause of their disease "; and, significantly, that one " can get an infection from exposure to cold such as going into the icebox ".

Upon what seem to us the unwarranted conclusions that claimant's medical theory of causation was the aggravation of a pre-existing condition of emphysema and that the board found aggravation and predicated the award upon it, appellants rely solely upon *Matter of Ashley* v. *Mardon Operating Corp.* (9 A D 2d 826). In that case, we merely stated the familiar rule that " the aggravation of a condition which is not occupational in nature, cannot be considered an occupational disease" and found that there was no proof in the record that emphysema was a common hazard of or a natural incident to the employment of a general manager of a taxicab company whose work involved dispatching drivers, collecting their cash receipts and keeping records. As rather clearly appears from the medical evidence hereinbefore quoted, the causation in the case now before us was direct and not by way of aggravation and we do not construe the board's decision as proceeding upon any other basis. Indeed, we find no evidence that any disease pre-existed claimant's first symptoms of chest difficulty (these some two or three years after he commenced working in the icebox) and appellants refer us to no evidence thereof, and, in fact, to nothing more than an inconclusive collquy between claimant's attorney and a member of the board panel.

The regular exposure to temperature extremes was certainly a " distinctive feature of the claimant's job, common to all jobs of that sort " and the medical evidence made abundantly clear the " recognizable link " between it and the disease (*Matter of Harman* v. *Republic Aviation Corp.*, 298 N. Y. 285, 288) ; and the board could find upon equally strong evidence and inference therefrom that the " conditions " of claimant's long, regular and frequent exposures, while at work in the icebox and packing room, where those "to which all employees of [his] class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general." (*Matter of Goldberg* v. *954 Marcy Corp.*, 276 N. Y. 313, 319.) These rules, as enunciated in *Goldberg* and in *Harman*, were restated in *Matter of Detenbeck* v. *General Motors Corp.* (309 N. Y. 558, 560–561), which otherwise seems to us not in point, being, like *Ashley* (*supra*), an aggravation case, in which the court found that the " condition in claimant's case was due to a congenital defect of the spine " (p. 506) ; that " the work in which he was engaged simply amounted to the ordinary wear and tear of life impinging on the infirmity with which [he] had been born " (p. 561); and that the test of occupational

disease (that of " a recognizable link between the disease and some distinctive feature of the claimant's job ") " is not met where disability is caused by an aggravation of a condition which is not occupational in nature " (p. 562). We must similarly distinguish as cases of aggravation, in which there was no proof that the pre-existing ailments were " occupational in nature ", the decisions in *Matter of Conroy* v. *Rupert Fish Co.* (8 A D 2d 553), in which the absence of proof relating pre-existing quiescent tuberculosis to the occupation generally, required us to remit, and *Matter of Smith* v. *Sports Room Supper Club* (7 A D 2d 809), which was also remitted to permit of additional medical proof. Neither do we consider decisive the fact, if such it is, that people in all walks of life are subject to the pulmonary disorders here found. " ' The conditions of employment which distinguish the occupational disease from the ordinary diseases of life ' are sufficiently distinctive if ' familiar harmful elements are present in excessive degree.' (1 Larson on Workmen's Compensation Law, § 41.50.) " (*Matter of Wildermuth* v. *B. P. O. Elks Club,* 5 A D 2d 911, motion for leave to appeal denied 4 N Y 2d 677, involving disability from varicose veins; and see *Matter of Elkin* v. *D. & J. Cleaners,* 14 A D 2d 402, appeal dismissed 11 N Y 2d 885.) Conversely, the fact that " the disease is uncommon does not necessarily remove the question from the board's domain of fact, as was held in *Matter of Preusser* v. *Allegheny Ludlum Steel Corp.* (4 A D 2d 727, affd. 4 N Y 2d 773), in which the employer argued unsuccessfully that the disease was not occupational because there was no proof that the harmful exposure would be injurious to the average workman." (*Matter of Moore* v. *Ford Motor Co.,* 9 A D 2d 165, 167.) In still another factual situation, it was held that Dupuytren's contracture, common enough in some few employments, could be linked to yet another occupation —that of electrician—on the basis that the work " involved heavy use of the hands " and this without proof of the incidence of the disease among electricians generally. (*Matter of White* v. *Iroquois Gas Corp.,* 11 A D 2d 572, affd. 10 N Y 2d 869; and see *Matter of Sheehy* v. *Doyle,* 8 A D 2d 267, motion for leave to appeal denied 7 N Y 2d 706, involving a laborer employed by a city transit system.)

Pulmonary tuberculosis caused by repeated exposure to cold in a meat market was held to be an occupational disease in *Matter of Bishop* v. *Comer & Pollock* (251 App. Div. 492) which involved direct causation and thus is not necessarily bereft of authority as predating the *Detenbeck* case (309 N. Y. 558, *supra*), dealing with aggravation. Further, interestingly

enough, the decision in *Bishop* was concurrent with the Appellate Division's decision of the *Goldberg* case (251 App. Div. 904), which was subsequently affirmed in the Court of Appeals upon the ground of accident (276 N. Y. 313, *supra*) and which was, as above noted, later cited and approved in *Detenbeck*. It has been held too that pulmonary disease contracted by a butcher working in refrigerated areas may constitute an occupational disease and also be due to accidental injury. (*Matter of Wolfe* v. *Brohman,* 260 App. Div. 816, affd. 285 N. Y. 635; *Matter of Waxman* v. *Paget,* 264 App. Div. 967.)

The medical testimony in this case brings it within the purview of very recent decisions as well, in that claimant's medical expert equated the insult of the refrigerated air to that of other bronchial irritants encountered in industry. In one such case, involving emphysema, we considered it "almost obvious that the inhalation of acid fumes is an occupational hazard" and, having previously noted that the case seemed more nearly analogous to the allergy cases than to those of pre-existing disease or congenital defect, said: "The fact that one employee might be less affected than another does not destroy this conception." (*Matter of Ciampa* v. *Tripp Plating Co.,* 3 A D 2d 621, 622; see, also, *Matter of Zecca* v. *Levinsohn & Co.,* 12 A D 2d 676, motion for leave to appeal denied 9 N Y 2d 610; *Matter of Muench* v. *Schoenfeld Co.,* 12 A D 2d 847.)

The repeated insults of refrigerated air, as here shown, seem comparable, also, to the repetitive action and additive effect upon intervertebral discs of a particular form of physical exertion necessary to a particular work operation, such bodily movements having been found causative of disc herniation, and that condition, in turn, held to constitute occupational disease, apparently because the essential link was so clearly recognizable; and this without proof of the prevalence of the condition among other workmen in the particular occupation and despite the fact that all active persons, in and out of industry, are exposed, in greater or less degree, to the hazard of disc lesion. (See *Matter of Mullarkey* v. *New York Hosp.,* 13 A D 2d 584, affd. 11 N Y 2d 898; *Matter of Wehling* v. *Ford Motor Co.,* 7 A D 2d 175, motion for leave to appeal denied 6 N Y 2d 705.)

In sum, the appeal presents proof of a disease which rational medical evidence linked and directly associated with repeated and protracted exposure to refrigerated air. Such, obviously, was a markedly "distinctive feature of the claimant's job, common to all jobs of that sort", and thus met the primary test imposed in *Harman* (298 N. Y. 285, 288, *supra*), and reiter-

ated in *Detenbeck* (309 N. Y. 558, 560, *supra*); and was, as seems self-evident, also within the cognate requirements there stated. Upon the substantial evidence before it the board could find occupational disease, within authoritative definition, and we may not, of course, disturb an award so grounded.

Appellants' additional contentions and procedural objections do not disclose substantial merit.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

REYNOLDS, J., (dissenting). It is undisputed that claimant was completely disabled in April, 1956 and that the cause of disablement was pulmonary emphysema. For the 15-year period prior to April, 1956 during which claimant had been employed by appellant employer he had worked in various meat departments where he was almost continuously exposed to cold damp working conditions. Claimant testified that in 1950 he first noticed shortness of breath and that it gradually became worse until by 1955 he could no longer breathe when in a refrigerator. In 1956, while home in bed, claimant had a severe attack of shortness of breath and was thereafter unable to return to work. The board has found the disease, contracted or aggravated, was an occupational disease. Appellants contend that there is no substantial evidence to establish the requisite causal relationship. While the record is not clear whether the board considered that the disease was contracted in employment or that there was a nonindustrial contraction aggravated by employment, we find claimant's expert did provide substantial evidence upon which the board could properly have found the latter. The full board of chest consultants found minor aggravation, by the intermittent exposures to cold, of bronchitis and emphysema, mentioning the background of chronic infection, heavy smoking and pre-existing lung disease. Claimant's doctor found that " Mr. Roettinger was suffering down through the years from episodes of bronchospasm which, according to the history and according to the findings, were made worse by exposure to cold air " and again " In this particular case where we note the well documented acute exacerbations following exposure to cold, I feel without much doubt that the more serious accelerating factor is this exposure to cold and in the course of his employment ". Indeed claimant's counsel, in a hearing on March 20, 1961 before the board in a colloquy with Mr. Schwartz, a board member, agreed that his case was predicated upon an aggravation. So there seems little doubt that there is no substantial evidence of anything but an aggravation herein. Unlike the

majority, however, we find no import in whether "contraction" or "aggravation" is involved. Under the rule laid down in *Matter of Detenbeck* v. *General Motors Corp.* (309 N. Y. 558) in addition to causal relationship claimant must establish that the disease involved is occupational in nature. While *Detenbeck (supra)* was an "aggravation" case we find no reason, as suggested by the majority, to limit its holding so narrowly especially in view of the following language utilized by the Court of Appeals therein: " ' An ailment does not become an occupational disease simply because it is *contracted* on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. As this court observed in *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313, 318–319), an occupational disease is one "which results from the nature of the employment, and by nature is meant * * * conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general." ' (*Matter of Harman* v. *Republic Aviation Corp.*, 298 N. Y. 285, 288; *Matter of Champion* v. *Gurley*, 299 N. Y. 406.) " (Emphasis added.) (*Matter of Detenbeck* v. *General Motors Corp., supra,* pp. 560–561.) The result in *Detenbeck (supra)*, should not be confused with the reasoning therefore. We find the *rule* laid down in *Detenbeck* to be that for a disease to be considered "occupational" under the Workmen's Compensation Law it must be an ailment which is established to be "a natural incident of a particular occupation" and the *result* to be "the aggravation of a condition which is not occupational in nature, cannot be considered an occupational disease" rather than vice versa as suggested by the majority. This court has consistently held, at least in respiratory disease cases, that where there is no proof that the disease in question relates to the occupation generally or that the disease is a hazard to which all employees in the same kind of employment are exposed a finding of occupational disease cannot be upheld (*Matter of Ashley* v. *Mardon Operating Corp.*, 9 A D 2d 826; *Matter of Conroy* v. *Rupert Fish Co.*, 8 A D 2d 553; *Matter of Smith* v. *Sports Room Supper Club*, 7 A D 2d 809). In *Matter of Conroy* v. *Rupert Fish Co. (supra)* the *Detenbeck* test was found not to have been met, where the medical proof showed that claimant's exposure to cold from working in a freezer *caused pneumonia* which·may

have activated a quiescent tuberculosis, since there was no proof relating the disease to the occupation generally. To the same effect in *Matter of Ashley* v. *Mardon Operating Corp.* (*supra*) (emphysema due to inhaling gasoline and paint fumes) and *Matter of Smith* v. *Sports Room Supper Club* (*supra*) (emphysema due to dust and cooking fumes). The fact that these cases may have in part involved aggravation of a pre-existing condition is only indicative of the type of cases in which the *Detenbeck* rule has been applied and does not suggest a limitation thereto. The instant record not only lacks any proof that emphysema is a disease which is a common hazard of or a natural incident to the type of employment in which the instant claimant participated but rather it is suggested by claimant's own expert that it is a disease which attacks people in all walks of life and thus in the present state of the record the award cannot be sustained. There is no evidence that emphysema is a disease common to butchers. *Matter of Bishop* v. *Comer & Pollock* (251 App. Div. 492) relied on by the board was decided prior to the decision in *Detenbeck* (*supra*) and was not subject to the evidentiary tests therein prescribed. Claimant, however, should be afforded an opportunity to produce proof on this issue if he be so advised. The decision and award should be reversed and the claim remitted.

BERGAN, P. J., and HERLIHY, J., concur with GIBSON, J.; REYNOLDS and TAYLOR, JJ., dissent and vote to reverse and remit in opinion by REYNOLDS, J.

Decision and award affirmed, with costs to the Workmen's Compensation Board.