1997 SD 93

**Arletta ZOSS, Claimant and Appellant,**

v.

**UNITED BUILDING CENTERS, INC., Employer and Appellee,**

and

**St. Paul Fire and Marine Insurance Company, Insurer and Appellee.**

**Nos. 19764, 19784.**

Supreme Court of South Dakota.

Argued March 25, 1997.

Decided July 16, 1997.

Michael F. Marlow, Shane D. Buntrock of Johnson, Heidepriem, Miner & Marlow, Yankton, for Claimant and Appellant.

Gregory G. Strommen of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for Appellees.

KONENKAMP, Justice.

[¶ 1.] Arletta Zoss, a bookkeeper and salesperson, suffered severe allergic reactions to lawn and garden chemicals while employed at United Building Centers (UBC). Medical advice led her to eventually quit her job. Because her last occupation was at UBC and she cannot work there, she contends her "occupational disease" renders her totally disabled. Under our workers' compensation statutes, is an occupational disease defined by an inability to work in a particular place, rather than by an incapacity to perform a general occupation? We answer no and affirm the denial of total disability benefits.

### Facts

[¶ 2.] Zoss began work for UBC in March, 1989, as a bookkeeper and salesperson. In the spring of 1992, when UBC began to carry an extended line of lawn and garden chemicals, Zoss experienced cold symptoms and a sore throat. On April 17, 1992, she handled bags of fertilizer while helping a customer. She immediately suffered from hives, blotchy skin, elevated temperatures, and gastro-intestinal problems. She had no previous sensitivity to chemicals or fertilizers. Her doctor diagnosed anaphylaxis, a severe allergic reaction.

[¶ 3.] On April 28th, when directly exposed to more substances at work, she suffered the same response. After two similar experiences in May, she began treatment with Dr. Neumayr, the Yankton Clinic's allergy specialist. He recommended she avoid the irritating substances at work. In August 1992, she had another reaction at home to "bug spray." By this time, UBC had removed the lawn chemicals to an outside storage area, decreasing the symptoms Zoss encountered.

[¶ 4.] She had no other allergy attacks until early 1993, at which time Dr. Neumayr suggested she leave her employment at UBC. In July 1993, she quit and has suffered less acute allergy attacks since. She has, on the other hand, experienced sleeping difficulties, body aches, burning eyes, headaches, nasal burning, fatigue, and general skin puffiness. Cigarette smoke, exhaust fumes, laundry bleach, perfume, and other substances now cause her physical irritation. In May 1995, she was diagnosed with asthmatic bronchitis,

in addition to the allergies, with symptoms expected to continue indefinitely.

[¶ 5.] Zoss filed for workers' compensation benefits. After a hearing, the Department of Labor determined: (1) she was not totally disabled by an occupational disease, as defined in SDCL 62–8–4; (2) she was not, in the alternative, totally disabled under the odd-lot doctrine; but (3) she established a causal connection between her employment and her disability. It assigned her a 17.5% vocational loss and awarded benefits. Zoss appealed and the circuit court affirmed in all respects. It also found UBC had waived its additional appeal issue by delinquent filing. On appeal to this Court, the parties present the following: (1) whether Zoss is totally disabled due to an occupational disease; (2) whether she is totally disabled under the odd-lot doctrine; (3) whether UBC waived its additional issue on appeal; and (4) whether Zoss established a causal connection between her employment and her disability.

### Standard of Review

[¶ 6.] In this appeal:

The standard of review ... is controlled by SDCL 1–26–36. The Supreme Court makes the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct. *Appeal of Templeton,* 403 N.W.2d 398 (S.D.1987). When the issue is a question of fact, the actions of the agency are judged by the clearly erroneous standard. *Application of Northwestern Bell Telephone Co.,* 382 N.W.2d 413 (S.D.1986). When the issue is a question of law, the actions of the agency are fully reviewable. *Matter of State & City Sales Tax Liability,* 437 N.W.2d 209 (S.D.1989). Mixed questions of law and fact are also fully reviewable. *Permann v. Dept. of Labor, Unemp. Ins. D.,* 411 N.W.2d 113 (S.D. 1987).

*Tieszen v. John Morrell & Co.,* 528 N.W.2d 401, 403–04 (S.D.1995); *Rohlck v. J & L Rainbow, Inc.,* 1996 SD 115, ¶ 8, 553 N.W.2d 521, 524–25. On factual determinations under the clearly erroneous standard, the question is not whether there is substantial evidence contrary to agency findings, but whether substantial evidence supports those findings. *Hendrix v. Graham Tire Co.,* 520 N.W.2d 876, 879 (S.D.1994). *See also Helms v. Lynn's, Inc.,* 1996 SD 8, ¶ 10, 542 N.W.2d 764, 766; *Shepherd v. Moorman Mfg.,* 467 N.W.2d 916, 919 (S.D.1991). Even if evidence exists to contradict the Department's findings, "so long as there is some 'substantial evidence' in the record which supports the Department's determination," we will affirm. *Id.* (citations omitted).

### Analysis and Decision

### [¶ 7.] 1. Occupational Disease

[¶ 8.] Zoss claims total disability from her occupational disease and relies upon our particular statutory definition for authority:

Where an employee of an employer subject to this chapter suffers from an occupational disease as defined in § 62–8–1, and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, .... and the disease was due to the nature of an occupation or process in which he was employed within the period previous to his disablement limited in this chapter, the employee, ... shall be entitled to compensation ... except as otherwise provided in this chapter ....

SDCL 62–8–4. SDCL 62–8–1(6) defines "occupational disease" as a "disease peculiar to the occupation in which the employee was engaged and due to causes in excess. of the ordinary hazards of employment and includes any disease due or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment."

[¶ 9.] Zoss focuses on "last occupation in which [she] was injuriously exposed" in SDCL 62–8–4 to emphasize her disease was specific to her "last occupation"—even if she were able to perform other jobs, as she cannot work at her last job at UBC, she is, by her interpretation, totally disabled. The Department and the circuit court both ruled her affliction was not an occupational disease under the statutes. Stressing "peculiar to the occupation in which the employee was engaged" from SDCL 62–8–1(6), the Depart-

ment found she was a bookkeeper and salesperson, not, as Zoss argued, a bookkeeper and salesperson *at UBC or a lawn and garden center*. We review statutes without deference to the Department. *Nilson v. Clay County*, 534 N.W.2d 598, 600 (S.D.1995).

[¶ 10.] Zoss offers several New Mexico cases to support her position. In *Vincent v. United Nuclear–Homestake Partners*, 89 N.M. 704, 556 P.2d 1180 (1976), a miner contracted silicosis and was unable to work in mining. The court found he had an occupational disease, even though he could perform other occupations. 556 P.2d at 1182. He was unable to ever work in any underground mine again. Zoss, conversely, may work as a bookkeeper or salesperson in places other than those having lawn, garden, or other irritating chemicals present.[1] Earlier New Mexico cases Zoss cites are equally unavailing. *See Herrera v. Fluor Utah, Inc.*, 89 N.M. 245, 550 P.2d 144 (App.1976); *Holman v. Oriental Refinery*, 75 N.M. 52, 400 P.2d 471 (1965).

[¶ 11.] More recent decisions from New Mexico and other states contradict the narrow definition Zoss advocates. In *Rader v. Don J. Cummings Co., Inc.*, the court held an occupational disease must be peculiar to a worker's occupation, not just to a particular workplace. 109 N.M. 219, 784 P.2d 38, 45 (App.1989), *cert. denied*, 109 N.M. 131, 782 P.2d 384 (1989). For similar holdings, *see Jackson v. Risby Pallet & Lumber Co.*, 736 S.W.2d 575, 578 (Mo.Ct.App.1987) (a link for an occupational disease is shown if there is "some distinctive feature of the claimant's job which is common to all jobs of that sort"); *Cisneros v. Molycorp, Inc.*, 107 N.M. 788, 765 P.2d 761, 764 (App.1988), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988) ("The disease must have its origin in the inherent nature or mode of work of the profession or industry."); *Chadwick v. Public Service Co. of NM*, 105 N.M. 272, 731 P.2d 968 (App.1986); *Dennis v. Dep't of Labor & Indus.*, 109 Wash.2d 467, 745 P.2d 1295, 1303 (1987) (occupational disease must arise from conditions of a worker's particular occupation as op-

posed to conditions coincidentally occurring in the workplace).

[¶ 12.] In *Mack v. County of Rockland*, 71 N.Y.2d 1008, 530 N.Y.S.2d 98, 525 N.E.2d 744 (1988), a social worker allergic to workplace cigarette smoke sought disability benefits. Finding no occupational disease, the court wrote, "[a]n 'occupational disease' derives from the very *nature* of the employment, not a specific condition peculiar to the employee's place of work." *Id.* 525 N.E.2d at 744 (citations omitted). "Because claimant's injury was caused solely by the environmental conditions of her workplace, not by a distinctive feature of the occupation of psychiatric social worker, the Board had a proper legal basis to deny her claim." *Id.* Much like the situation in *Mack*, the maladies here were caused by particular conditions in the workplace, but they were not a "distinctive feature of the occupation" of bookkeeper or salesperson.

[¶ 13.] Similarly, the *New York Court of Appeals in Paider v. Park East Movers*, 19 N.Y.2d 373, 280 N.Y.S.2d 140, 227 N.E.2d 40 (1967), reversed a labor board decision granting benefits to a department store cashier who developed "chronic strain or myositis" because her cash register was bathed in cold drafts from air conditioning. 280 N.Y.S.2d at 142–43, 227 N.E.2d at 42. The claimant:

> was not subjected to an ailment necessarily a concomitant of the job of cashier. Cashiers as a class are not hired with the expectation that the work will be performed in front of a cold air ventilator. But in the particular situation in this case, the work was performed in such a hostile location. In *Roettinger* [*v. Great Atlantic & Pacific Tea Co.*, 17 A.D.2d 76, 230 N.Y.S.2d 903, *aff'd* 13 N.Y.2d 1102, 246 N.Y.S.2d 633, 196 N.E.2d 268] the claimant was a butcher who contracted emphysema because he was required to spend portions of his time in refrigerated air, as one might expect because of the nature of the work. In the present case, it cannot be said that the cold blasts from the air conditioning were "common" to all cashiers' jobs; rath-

---

1. Before her job at UBC, Zoss was a bookkeeper and secretary for four years at an insurance agency, and then held the same position for two years at a company selling fire alarms and extinguishers. In fact, during her job at UBC, she worked for an accounting firm in the evenings.

er it was the place to work, not the work itself, that was responsible for claimant's illness.

*Id.* Like the cashier, working as a bookkeeper and sales clerk were not the causes of an allergic reaction. Previous bookkeeping jobs Zoss held are indicative. *See supra* n 1. Her condition is not "an ailment which is the result of a distinctive feature of the kind of work performed by claimant and others similarly employed...." *Paider,* 280 N.Y.S.2d at 143–45, 227 N.E.2d at 43. *See Dando v. Binghamton Bd. of Educ.,* 111 A.D.2d 1060, 490 N.Y.S.2d 360, 361 (1985).

[¶ 14.] Although the out-of-state cases we cite here construe their own workers' compensation laws, they lend interpretive weight to the Department's ruling denying Zoss an occupational disability. We decline to read our statutes in the constricted fashion Zoss urges. As her condition is not intrinsic to bookkeeping or sales jobs, she has not established an occupational disease.[2] We affirm the Department's ruling on this issue.

[¶ 15.] **2. Odd-lot Total Disability**

▉▉▉▉ [¶ 16.] Zoss argues in the alternative she is totally disabled under the odd-lot doctrine. Odd-lot disability is defined as follows:

> [A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income.

*Spitzack v. Berg Corp.,* 532 N.W.2d 72, 75 (S.D.1995) (quoting *Shepherd,* 467 N.W.2d at 918). Under this doctrine, an employee first bears the burden to show total disability. *Baker v. Dakota Min. & Constr.,* 529 N.W.2d 583, 585 (S.D.1995). If it is "obvious" an employee falls within the "odd-lot" category, the employer must then prove positions in the community are available for persons with the employee's limitations. *Welch v. Automotive Co.,* 528 N.W.2d 406, 410 (S.D.1995). "A claimant may show 'obvious unemployabil-

ity' by: (1) showing that his 'physical condition, coupled with his education, training and age make it obvious that he is in the odd-lot total disability category,' or (2) persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims." *Petersen v. Hinky Dinky,* 515 N.W.2d 226, 231 (S.D.1994) (internal citations omitted). Inversely, if the employee is not obviously unemployable, the burden remains with the employee to demonstrate the unavailability of suitable employment, after reasonable, albeit unsuccessful, efforts to find work. *Id.* at 232; *Bonnett v. Custer Lumber Corp.,* 528 N.W.2d 393, 395 (S.D.1995) (citations omitted).

▉▉▉▉ [¶ 17.] The Department found Zoss failed to prove total disability by a preponderance of the evidence. On appeal, she asserts she falls within the "obviously unemployable" category, underscoring her continued allergic symptoms, shortness of breath, nausea, and diarrhea, as well as her asthmatic bronchitis. Further, according to Zoss, she becomes ill at least once or twice a month, with episodes lasting from two to three days each. Her vocational expert, Rick Ostrander, believes these difficulties make her 95% unemployable. Yet the Department, as trier of fact, need not have accepted this testimony, as it was free to weigh it against UBC's countervailing vocational expert opinion and other evidence. *See Tischler v. United Parcel Service,* 1996 SD 98, ¶ 46, 552 N.W.2d 597, 605 ("The Department evaluated the two medical opinions. It is within the Department's discretion to disregard one expert's impairment rating and accept another."); *see generally Lewton v. McCauley,* 460 N.W.2d 728, 732 (S.D.1990). In fact, the Department specifically found Ostrander's opinion, because it had no medical basis, was speculative and therefore rejected it. The Department also noted Zoss had not worked anywhere since leaving UBC, therefore making it difficult to validate her projections she would frequently be absent at another job. Our review of the evi-

---

2. Zoss also asserts she is allergic to cigarette smoke, perfume, and cologne, further decreasing the number of positions available to her. However, the Department found insufficient medical support for this, and the finding is supported by substantial evidence.

dence supports the finding Zoss is not totally disabled. We affirm on this issue.

### [¶ 18.] 3. Waiver of Notice of Review Issues

 [¶ 19.] When Zoss appealed to the circuit court, UBC submitted a statement of additional issues on appeal, disputing the Department's causation ruling. SDCL 1–26–31.4 governs this procedure and provides, in part:

> Within ten days after the filing of the notice of appeal as required by § 1–26–31, the appellant ... shall file with the clerk of the circuit court a statement of the issues he intends to present on appeal and shall serve on the other parties a copy of such statement. If any other party wishes to raise additional issues on appeal, he shall file an additional statement of issues on appeal within ten days after service of the appellant's statement.

Zoss mailed a notice of appeal and statement of issues to the Department and UBC on November 28, 1995. The documents were filed with the clerk of courts on December 6, 1995. On the same day, UBC mailed its statement of additional issues to the Department and Zoss, but failed to file it with the clerk of courts until April 26, 1996.

[¶ 20.] Clearly, the statute provides the proper place for filing is with the circuit court clerk; merely serving an opposing party is insufficient. The court found it did not have jurisdiction to consider UBC's additional appeal issue. It concluded, as do we, that UBC's reliance on our decision in *Oberle v. City of Aberdeen* is misplaced. 470 N.W.2d 238 (S.D.1991). In *Oberle,* we held an appealing party did not forfeit jurisdiction because it failed to file a statement of additional issues along with its notice of appeal:

> Failure to timely file a notice of appeal of an agency's decision deprives both the circuit court and this court of jurisdiction to review the agency's decision. SDCL 1–26–31 provides the basis for the circuit court to exercise jurisdiction. Because jurisdiction is conferred by the filing of the notice of appeal, it would be inconsistent to require that, even if the notice of appeal is

filed, the statement of the issues must also be filed to properly invoke jurisdiction. *Id.* at 242 (citations omitted). UBC believes this holding absolves its late filing. Yet in *Oberle* the appellant had already obtained jurisdiction by filing a notice of appeal, so it was not necessary to do so again with the filing of a statement of issues. It will not follow, however, that an appellee can invoke jurisdiction on its own additional issues without filing the required statement in the proper place within the allowable timeframe. We have consistently held in a similar context that failure to timely file a notice of review constitutes a waiver. *Day v. John Morrell & Co.,* 490 N.W.2d 720, 724 (S.D.1992). Whether Zoss objected to this late filing is irrelevant. We therefore deem UBC's additional issue waived.

[¶ 21.] Affirmed.

[¶ 22.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

