2001 SD 24

**Debrah K. SAUER, Appellant,**

v.

**TIFFANY LAUNDRY & DRY CLEANERS, Employer and Appellee.**

Crum & Forster Commercial Insurance Companies, Insurer Defendants and Third–Party Petitioners and Appellees,

v.

Rockwood Insurance Companies, Third–Party Insurer.

No. 21276.

Supreme Court of South Dakota.

Argued Oct. 24, 2000.

Decided Feb. 28, 2001.

Rory King of Siegel, Barnett & Schutz, Aberdeen, for appellant Debrah K. Sauer.

Kenneth L. Chleborad of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, for appellees Tiffany Laundry and Rockwood Insurance Companies.

David A. Gerdes of May, Adam, Gerdes & Thompson, Pierre, for appellees Crum & Forster Insurance Company.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we consider whether an employee who developed skin and bronchial problems coincident with her employment in a commercial laundry suffered from an occupational disease. The Department of Labor denied her claim, concluding that the employee could not meet the statutory definition of an occupational disease because her condition was not peculiar to her occupation. On appeal, the circuit court affirmed, and we uphold that decision.

## Background

[¶ 2.] Debrah Sauer is a lifelong resident of Aberdeen, South Dakota. After graduating from high school, she pursued different jobs, including employment as a waitress, a store clerk, and a telephone representative. In August 1986, she began working at Tiffany Laundry. Her duties included folding laundry, helping with the dryer, and feeding wet sheets into a mangle. Before her employment with Tiffany, her health history was unremarkable. She had never been to a dermatologist or an allergist and had no prior episodes of asthma or respiratory difficulty.

[¶ 3.] A month after she started working at Tiffany, she noticed a rash on her hand. She told her supervisor, who recommended Benadryl cream. Sauer later testified that she knew of other Tiffany employees who also developed rashes. Her condition, however, became more complicated. In November and December 1986, the rash on her hand transformed into hives. She sought treatment from her family physician. He prescribed steroids, but her ailment continued to deteriorate. Hives covered her face and caused her lips and eyes to swell.

[¶ 4.] In March 1987, Dr. Redmond, an Aberdeen dermatologist, examined Sauer and diagnosed uticaria, the medical term for hives. He prescribed a different medication. As Sauer felt her condition was related to bleach exposure at Tiffany, Dr. Redmond spoke with her supervisors about keeping her away from bleach products. Sauer continued to experience problems at work, but reported that her symptoms would abate while she was away from the laundry. At work, in addition to the hives, she experienced breathing difficulties and tightness in her throat. Dr. Redmond could not control Sauer's condition with medication and eventually recommended that she resign. In July 1987, she left her employment with Tiffany.

[¶ 5.] Because Sauer's health problems were attributed to bleach, all such products were removed from her household. Approximately two months after she left Tiffany, her symptoms subsided. She was symptom free until January 1988, when she experienced another outbreak after a relative who worked at Tiffany visited her home. Sauer suffered hives and tightness in her throat. She believed that it was caused by the presence of bleach on the relative's clothing. After this encounter,

Sauer stayed away from bleach products and was generally asymptomatic.

[¶ 6.] In January 1989, Sauer began working as a dietary assistant at the Aberdeen Living Center. From January to May, she worked in the kitchen and dining area without incident. In May, she noticed a strong smell of bleach when janitors were cleaning the dining room floor. She testified that after noticing this smell her neck started to swell and she began to get "little hives." She went home for the afternoon. Later, she told Dr. Redmond of her exposure. She quit her job per his advice and has not been employed since. From 1989 her condition worsened to a point where she could no longer leave home. According to Sauer, the presence of bleach, chlorine, or strong chemicals will cause a reaction.

[¶ 7.] Sauer filed a claim for workers' compensation benefits on March 6, 1989.[1] She later amended her claim to seek total disability benefits for an occupational disease. In a hearing before the Department, Sauer, her parents, a vocational specialist, and her dermatologist testified. Her dermatologist referred to a consultation he had with Dr. Luzier, an Aberdeen allergist, regarding the case. Both the employer and the insurer objected. They asked that the matter be kept open to take further depositions. They also requested that the Department allow an independent consultation by allergist, Dr. Morris. Both Dr. Morris and Dr. Luzier suggested further testing in an environmental chamber.[2]

[¶ 8.] The testing took place at the Allergy Respiratory Institute of Colorado. In the environmental chamber, bleach chemicals were released, but the bleach smell was masked. Sauer's uticaria could not be scientifically reproduced when she was exposed to bleach as opposed to neutral substances. According to Dr. Straight, who evaluated the results, the testing "effectively ruled out plain sodium hypochlorite bleach as a cause of her problem." The evaluation concluded that many agents at a commercial laundry "could ... irritate preexisting asthma, but would not be expected to have caused it." After the testing, the Department's record was supplemented with affidavits and depositions. In its findings of fact and conclusions of law, the Department ruled that Sauer had failed to show that she had a disease that was peculiar to her occupation, and thus she did not suffer from an occupational disease. Her appeal in the circuit court was affirmed. She now appeals to this Court.[3]

### Analysis and Decision

[¶ 9.] Sauer asserts that she is totally disabled by her occupational disease. Claimants have the burden of proving all elements necessary to qualify for compensation. *Tischler v. United Parcel Service*, 1996 SD 98, ¶ 25, 552 N.W.2d 597, 602 (quoting *Day v. John Morrell & Co.*, 490 N.W.2d 720, 724 (S.D.1992))(further citations omitted). *See also Kraft v. Kolberg Mfg. Co.*, 88 S.D. 140, 215 N.W.2d 844, 846 (1974)(recognizing that this same burden exists under the occupational dis-

1. It is not clear why this case took so long to move through the system. The petition was filed in March 1989; the hearing was conducted in April 1994; after the hearing the matter was suspended so that Sauer could undergo further tests and additional follow-up discovery could be conducted; the Department entered its written decision in June 1998; and, on appeal, the circuit court heard the matter and issued a bench decision in June 1999. The case was appealed to this Court and oral argument was heard on October 24, 2000.

2. The environmental chamber is a recent development in the treatment and diagnosis of allergies. This chamber allows a physician to evaluate a patient while controlling the content of the air. During this process, the physician can isolate and test for sensitivities to various substances.

3. Our standard of review is governed by SDCL 1–26–36; *Sopko v. C & R Transfer Company, Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (citations omitted); *Zoss v. United Building Centers, Inc.*, 1997 SD 93, ¶ 6, 566 N.W.2d 840, 843. *But see* SDCL 15–6–52(a) (as amended effective July 1, 2000).

ease chapter) (citations omitted). Those seeking compensation for an occupational disease must prove: (1) they suffer from an occupational disease as defined in 62–8–1(6); (2) they are disabled from performing work in the last occupation in which they were injuriously exposed to the hazards of such disease; and (3) the disease is "due to the nature of [the] occupation or process" in which they were employed before their disablement. *See* SDCL 62–8–4. Injurious exposure means "that concentration of toxic material which would, independently of any other cause whatsoever (including the previous physical condition of the claimant) produce or cause the disease for which claim is made." SDCL 62–8–1(4).

[¶ 10.] To recover benefits under SDCL 62–8–4, Sauer must first show that she suffers from an occupational disease. SDCL 62–8–1(6) defines a compensable occupational disease as "a disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment...." We must evaluate the evidence presented to the Department to decide whether Sauer is entitled to benefits. She need not establish the requirements with absolute certainty, but recovery may not be granted on mere possibility or speculation. *Kraft*, 215 N.W.2d at 846 (citations omitted).

[¶ 11.] Sauer believes her chronic uticaria, asthma, and angioedema are "peculiar to her occupation" as a commercial laundry worker.[4] A condition is peculiar to a particular occupation when it "is the result of a distinctive feature of the kind of work performed" by a claimant and others similarly employed. *Zoss*, 1997 SD 93, ¶ 13, 566 N.W.2d at 845 (citations and internal quotations omitted). Unless the condition is "intrinsic" to an occupation, one does not suffer from an occupational

disease. *See id.* at ¶ 14, 566 N.W.2d at 845. *See also Mack v. County of Rockland*, 71 N.Y.2d 1008, 530 N.Y.S.2d 98, 525 N.E.2d 744 (1988) (recognizing that an occupational disease is present only when an employee's medical condition results from "the ordinary and generally recognized risks incident to a particular occupation.")

[¶ 12.] Sauer testified that other employees at Tiffany suffered from rashes; as such, it was not unusual that she would suffer from a rash. This is the only testimony, however, that Sauer offered to show that her condition is peculiar to the occupation of a commercial laundry worker. *See* SDCL 62–8–1. In her brief to this Court, Sauer simply states that "her disease is peculiar to her occupation, not the particular workplace" without offering support for this statement. She never established that uticaria, asthma, and angioedema are recognized risks for commercial laundry workers. *See Zoss*, 1997 SD 93, ¶ 14, 566 N.W.2d at 845; *see also Mack*, 530 N.Y.S.2d 98, 525 N.E.2d at 744.

[¶ 13.] On the other hand, the Department accepted expert medical testimony that this condition was not peculiar to the occupation of laundry workers. The Department considered the deposition testimony of Dr. Morris, an allergist. In his opinion, Sauer suffers from chronic idiopathic uticaria—idiopathic, meaning of unknown cause. Likewise, Dr. Morris noted that chronic uticaria is "a relatively common condition that is usually not caused by any allergy." His conclusion was confirmed by environmental chamber testing recommended by both Sauer's and Tiffany's experts. After this evaluation, even Sauer's treating dermatologist conceded that her uticaria "is idiopathic at present." In that testing, Sauer's reactions could not be differentiated between exposures to bleach or distilled water.[5] As for her asth-

---

4. Angioedema: a condition characterized by swelling in areas of the skin, mucous membranes, or viscera. Taber's Cyclopedic Medical Dictionary (15th Ed. 1985).

5. When the evaluation in the environmental chamber eliminated the theory that Sauer suffered from a bleach allergy, Dr. Luzier opined that the uticaria might be related to Sauer's thyroid disorder.

ma type symptoms, Dr. Morris ascribed those to exercise or cold air, common to four to five percent of the population.

[¶ 14.] While Sauer's treating allergist and dermatologist continued to opine that bleach may have triggered a pre-existing tendency towards uticaria or asthma, the Department evidently found that Dr. Morris's conclusions were more convincing. Under this record, we cannot override that finding. Fact finders are free to reasonably accept or reject all, part, or none of an expert's opinion. *See Goebel v. Warner Transp.*, 2000 SD 79, ¶ 33, 612 N.W.2d 18, 27 (citations omitted). Sauer offered insufficient evidence to show that her condition was "peculiar to her occupation." *See* SDCL 62–8–1(6); SDCL 62–8–4. At best she presented a hypothesis that some environmental circumstance in her workplace triggered a preexisting asymptotic condition. Occupational disease must be attributable to conditions particular to an occupation, rather than conditions coincidental to a workplace. *See Zoss,* 1997 SD 93, ¶ 11, 566 N.W.2d at 844 (citations omitted).

[¶ 15.] As Sauer has not carried her burden of proving that she suffers from an occupational disease, we affirm the Department's decision and refrain from addressing the other requirements for recovery.

[¶ 16.] Affirmed.

[¶ 17.] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.