1998 SD 37

**Joyce F. KURTZ, Appellee,**

v.

**SCI, Appellant.**

**No. 20153.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1998.

Decided April 8, 1998.

Margo Tschetter Julius of Groves & Julius, LLP, Rapid City, for appellee.

Kenneth L. Chleborad of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellant.

SABERS, Justice.

[¶ 1.] Workers' compensation self-insured employer appeals circuit court's ruling that claimant is entitled to permanent total disability benefits under the odd-lot doctrine. Employer claims the court erred in adopting the administrative law judge's findings of fact and conclusions of law because they were

1. SDCL 62–7–16 provides:
   Any party to proceedings before the department may within ten days after service upon

rejected by the Director of the Department of Labor. We affirm.

**FACTS**

[¶ 2.] Joyce Kurtz was employed as a computer board assembler by SCI (Employer) for approximately seven months. She worked in the same capacity for Employer's predecessor for about four years. On May 2, 1991, Kurtz experienced pain in her right hand after eight hours of consistent use of a torque wrench. She promptly reported her discomfort to her supervisor. Although she worked the following day without using the torque wrench, Kurtz reported continuing and increasing pain. She was referred to Dr. Preston, who diagnosed tenosynovitis of the right thumb. Dr. Preston referred her to a physical therapist, and she was eventually fitted with a wrist splint. On May 31, 1991, Kurtz and other employees were laid off.

[¶ 3.] Kurtz was referred to orthopedic surgeon Dr. Berkebile, who twice performed surgery on her. He first performed a release of the flexor tendon sheath in August of 1991 followed by a carpal tunnel release in early 1992. Kurtz was never re-hired by Employer and has not been employed since May, 1991. She was placed on temporary total disability status until sometime in late 1994.

[¶ 4.] Her efforts at re-employment, as well as her pain and self-reported limitations, were vigorously disputed by Employer when she petitioned for odd-lot disability. There was conflicting testimony, discussed later, regarding her ability to work. Mark Bratt, the administrative law judge (ALJ) granted Kurtz permanent and total disability benefits, ruling that she qualified for odd-lot status.

[¶ 5.] The Secretary (Secretary) of the Department of Labor (Department) granted Employer's petition for review brought under SDCL 62–7–16.[1] In a one-page order, Secretary reversed the ALJ's decision, stating that

him of a decision of the department, as provided in § 62–7–13, file with the department a

it was "clear error" without elaboration or explanation. He remanded "to the Division for such additional proceedings as it deems necessary to determine the extent of Claimant's disability." [2]

[¶ 6.] On remand, the parties stipulated that since ALJ Bratt was no longer with Department, the Director of Department (Director) could determine the case based on the existing record. Director assessed the "clear error" found by Secretary as follows:

> It is thought that the basis for this ruling was in the ALJ's finding of permanent total disability despite Claimant's acknowledged mental aptitude for retraining. Under the direction of *Shepherd v. Moorman Manufacturing,* 467 N.W.2d 916 (S.D. 1991), and its progeny, however, Claimant can establish that she is permanently and totally disabled due to pain, and the burden then falls on Employer to show the availability of work. Claimant has done so, and the opinion proffered by [Employer's expert] that available work existed was rejected. It is therefore concluded that Claimant is indeed "obviously unemployable," and is entitled to permanent total disability benefits, based on the discussion presented in the Division's previous decision, findings of fact, and conclusions of law. Those documents are hereby adopted as the Division's findings, conclusions and order in this matter. [Kurtz] shall submit proposed Findings of Fact and Conclusions of Law, and an Order consistent with this Decision[.]

Despite this decision, Director later issued the following order:

> I have reviewed employer's objections to Claimant's proposed findings of fact and conclusions of law, and am compelled once

more to revisit my determinations. I am persuaded that I have misinterpreted the legal effect of Secretary Johnson's review order, and must revise my decision. "Clear error" should properly be taken to mean that the factual determinations made by [ALJ], not just his legal conclusions, were in error, and I am bound by that finding. To me, this means that I should not merely adopt [ALJ's] findings as my own, but to reevaluate them in light of all the information in the record.

Having done this, I am convinced that Claimant is not entitled to permanent total disability benefits, but to permanent partial disability benefits as Employer has outlined. Making my own judgment as to her reports of pain, I find that she is not suffering such continuous, intense pain that she cannot work; that work is available within her restrictions that is regular and continuous; and that she is not totally unemployable. I hereby enclose a signed copy of Employer/Self–Insurer's proposed findings of fact, conclusions of law, and order, which will be entered as the Department's official stance in this matter.

[¶ 7.] Kurtz appealed to the circuit court. Based upon its review of the entire record, the circuit court reversed Director and adopted the ALJ's decision as its own, thus reinstating the award of odd-lot disability benefits. Employer appeals, claiming that the ALJ's decision was not the "final agency determination" and therefore the circuit court erred by reviewing the "wrong" decision. Employer also claims that Director's decision denying odd-lot benefits is not clearly erroneous.

## [¶ 8.] 1. STANDARD OF REVIEW

[¶ 9.] We review administrative appeals according to SDCL 1–26–36:

---

petition for a review of such decision. Upon the filing of such petition the secretary may in his discretion either deny such petition or direct that further hearing be had or additional evidence received, and in the event of such further hearing or of the receipt of additional evidence he may revise his decision in whole or in part or affirm the same. Notice of denial of such petition or any other order thereon shall be given as provided in § 62–7–13.

2. Kurtz' appeal of the Secretary's order was dismissed by Sixth Judicial Circuit Court Judge Zinter, who ruled that it was not a final, appealable order. This court dismissed Kurtz' appeal of that decision on the same basis. Order Granting Motion to Dismiss, # 19963 & # 19674, June 28, 1996.

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We will overrule an agency's findings of fact only when they are clearly erroneous. "The test is whether after reviewing all the evidence we are left with a definite and firm conviction that a mistake has been made." *Truck Ins. Exch. v. Kubal*, 1997 SD 37, ¶ 9, 561 N.W.2d 674, 676 (citation omitted). Conclusions of law are given no deference and are freely reviewable. *Id.*

[¶ 10.] Employer argues that the circuit court reviewed and affirmed the wrong decision by adopting the ALJ's conclusions. However, we are not bound by the circuit court's decision. "The Supreme Court [reviews] the administrative agency's decision ... unaided by any presumption that the circuit court's decision was correct." *Zoss v. United Bldg. Ctrs., Inc.*, 1997 SD 93, ¶ 6, 566 N.W.2d 840, 843 (citations omitted). Similarly, we give no deference to Director's decision since it is based entirely upon his review of the same record which we have before us. We are as capable of reading the record as the Director. *Cf. First Nat'l Bank of Biwabik, Minn. v. Bank of Lemmon*, 535 N.W.2d 866, 871–72 (S.D.1995):

For purposes of appellate review, we have repeatedly distinguished between "live" testimony and evidence presented in document form. Under our long-standing rule, when reviewing findings based on documentary evidence we do not apply the clearly erroneous rule ... but review the matter de novo.

. . .

A trial judge's superior fact-finding abilities relate to his opportunity to observe and evaluate live testimony; when physical or documentary evidence is offered, the trial court is in no better position to intelligently weigh the evidence than the appellate court.

(Citations omitted).

[¶ 11.] Employer correctly asserts that the ALJ's award of odd-lot benefits does not constitute a "final order or decision" in light of the subsequent decision from Director. *See Wendel v. Domestic Seed & Supply*, 446 N.W.2d 265, 269 (S.D.1989) ("[N]o appeal may be had until [Department] enters a final order or decision and no decision may be considered final while a petition for review is pending.") (relying on SDCL 62–7–18). However, we cannot disregard the ALJ's opinion, which is part of the record by statute. SDCL 1–26–33; *see also In re Johnson*, 337 N.W.2d 442, 445 (S.D.1983) (discussing scope of review when Secretary has modified or set aside appeal referee's decision in an unemployment insurance dispute):

Secretary, however, does not have unbridled discretion. Appeal referee's decision is part of the record and the record must be considered *as a whole* to see whether the result comports with the judicial standard of review upon appeal.

. . .

Secretary's departures from the appeal referee's findings are vulnerable if they fail to reflect attentive consideration to the examiner's decision.

(Emphasis in original) (citations omitted); *cf. Universal Camera Corp. v. National Labor*

*Relations Bd.*, 340 U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456, 470 (1951) ("Surely an examiner's report is as much a part of the record as the complaint or the testimony.") (construing Federal Administrative Procedure Act).

[¶ 12.] Therefore, we review the entire record, including the ALJ's decision, Secretary's grant of review, and both of Director's decisions. As for the ALJ's findings concerning credibility of witnesses, we follow our settled standard of review, i.e., "Due regard shall be given to the opportunity of the agency to judge the credibility of the witness." *Bonnett v. Custer Lumber Corp.*, 528 N.W.2d 393, 396 (S.D.1995) (citation omitted).[3]

## [¶ 13.] 2. WHETHER KURTZ IS ENTITLED TO ODD–LOT DISABILITY BENEFITS.

[¶ 14.] Whether a claimant is entitled to odd-lot disability benefits is determined as follows:

[A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income.

Under this doctrine, an employee first bears the burden to show total disability. If it is "obvious" an employee falls within the "odd-lot" category, the employer must then prove positions in the community are available for persons with the employee's limitations. A claimant may show "obvious unemployability" by: (1) showing that his physical condition, coupled with his education, training and age make it obvious that he is in the odd-lot total disability category, or (2) persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims. Inversely, if the employee is not obviously unemployable, the burden remains with the employee to demonstrate the unavailability of suitable employment,

3. Employer urges us to follow the so-called "majority rule" delineated in 8 *Larson's Workers' Compensation Law* § 80.12(a)—(b) (1997). That section discusses compensation systems where jurisdiction does not lie for an appeal from the decision of a single hearing examiner because it is *never* a final decision until it is reviewed by a full Board or Commission. "It follows that the review is limited to issues involved in the proceedings and decision of the full Commission and does not reach back to controversies that did not go beyond the referee level." *Id.* § 80.12(a), at 15–561 to –563. Obviously, South Dakota has no such system and appeals are regularly brought from an ALJ's decision. Employer cites SDCL 1–26–18.1 for the proposition that the ALJ's findings, conclusions, and decision remain "proposed" until the agency accepts, rejects, or modifies them. However, that statute was repealed effective July 1, 1995. 1995 S.D.Sess.Laws ch. 8 § 14. Kurtz' hearing was held August 2, 1995 and that statute no longer applied.

This court's previous decisions appear to place us between the "minority rule" and the "modified majority rule." The "minority rule" generally provides that when the hearing examiner's opinion is reviewed within Department, it is not to be disturbed unless clearly erroneous in light of the entire record. *Larson's, supra* § 80.12(c), at 15–572 to –589 (collecting cases). The "modified majority rule" accords great deference to the hearing examiner's find-

ings when credibility is a decisive issue. *Id.* § 80.12(d), at 15–589 to –593 (collecting cases).

Here, Director reversed the ALJ based entirely on a cold record. However, three of the four key witnesses testified live, and the ALJ specifically commented on the claimant's credibility as a witness. We decline to abandon our well-established policy of deferring to the factfinder's credibility determinations. *See Harden v. South Dakota Credit Union League, Inc.*, 87 S.D. 433, 435, 209 N.W.2d 665, 666 (1973):

Ordinarily, the Commissioner is the trier of facts in compensation cases and his findings of fact must be accepted by a reviewing court unless clearly erroneous.... But this rule of review is not applicable in the present case as the Commissioner of Labor did not conduct the evidentiary hearing and did not have the benefit of seeing and hearing the witnesses testify.

*See also Fall River County v. South Dakota Dep't of Revenue*, 1996 SD 106, ¶ 22, 552 N.W.2d 620, 626 ("Determining the credibility of the witnesses is the role of the factfinder. Where the trial court has resolved conflicts in evidence, we cannot change its findings."); *accord Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 864 (S.D.1993); *Mash v. Cutler*, 488 N.W.2d 642, 653–54 (S.D.1992); *Insurance Agents, Inc. v. Zimmerman*, 381 N.W.2d 218, 219 (S.D.1986).

after reasonable, albeit unsuccessful, efforts to find work.

*Zoss*, 1997 SD 93 at ¶ 16, 566 N.W.2d at 845 (citations & internal quotations omitted).

[¶ 15.] Kurtz was fifty-seven at the time of the hearing and is now sixty. She did not complete high school and does not have a G.E.D. She and her husband live in Whitewood, which is approximately seven miles from Sturgis. Prior to her nearly five years with Employer, she worked in assembly work, as a telephone receptionist, and as a waitress. She also ran the office for her husband's trucking business for a time.

[¶ 16.] The claimant's physical condition is key under either method of proving a prima facie case for odd-lot disability. Kurtz testified that the two surgeries eliminated the "locking" and the "tingling" but did not alleviate the pain, which she feels in her hand "all the time." Nearly any repetitive motion with her hands is painful and she has trouble gripping and lifting. She states that she no longer is able to weed her garden, mow her lawn, or bowl. Her automobile is equipped with a standard transmission and shifting gears bothers her. She can only write for very short periods before the pain becomes unbearable. Typing is also painful. She testified that she uses a "TENS" unit[4] and hot and cold water therapy ("contrast baths") on a daily basis. The functional capacities assessment conducted at Employer's request corroborates Kurtz' reports of continuous pain.

[¶ 17.] Dr. Berkebile testified by deposition and confirmed Kurtz' testimony that the surgeries did not alleviate the continuing pain in her right hand:

> I think her symptoms have changed as far as to what part of her hand or wrist bothers her, but I think they all fall under the broad category of repetitive trauma syndrome, so she's still having some problems. The problems she's having now are a little bit different than when I first saw her.
>
> . . .

I don't think there's anything that I can do that will make her able to go back to her former level of employment.

He also testified that the contrast baths, the splint, and the TENS unit all bring only temporary relief. He agreed that her pain would interfere or interrupt even the lightest of activities.

[¶ 18.] Dr. Meiners conducted a vocational assessment of Kurtz and testified at the hearing. She corroborated Kurtz' inability to write for extended periods, noting that she had obvious pain after ten minutes of writing with a pencil. Attempts to write with her non-dominant left hand were slow, labored, and mostly illegible. Dr. Meiners could not identify any job which Kurtz could perform on a competitive basis. Her opinion was that any short-term retraining programs would teach Kurtz manual skills which she would be unable to perform and that a long-term educational program aimed at cognitive skills would result in graduation and retirement age occurring simultaneously. Dr. Meiners stated that Kurtz' subjective complaints were consistent with Dr. Berkebile's written reports and consistent with his conversations with her regarding Kurtz.

[¶ 19.] Employer attempted to impeach Kurtz with a surveillance video. However, this video is not contrary to Kurtz' testimony. She is shown using her left hand to enter a right-hand door of a store. It shows her shifting packages from her left to her right hand to place them on the pickup seat; however, it also shows her carrying all of the packages to the pickup in her left hand. The ALJ observed: "During her testimony [Kurtz] consistently held her right hand in her lap palm up and the palm of her right hand was not calloused. Although [Kurtz] did use her right hand to hold paper at the hearing, she was observed using her left hand to open the door when leaving the hearing room." He also noted that she "presented as a very credible witness."

[¶ 20.] The ALJ concluded that Kurtz' physical condition, coupled with her edu-

---

**4.** A TENS unit is a small electric stimulator designed and prescribed to help ease pain.

cation, training and age made it obvious that she is in the odd-lot category. Upon review, Director agreed with the ALJ and further noted that she demonstrated that she is permanently and totally disabled due to pain. Our review of the record and testimony support these conclusions and Employer has not demonstrated that they are clearly erroneous.

[¶ 21.] The burden then shifted to Employer to refute these conclusions by proving that positions in the community are available for persons "with *all* of claimant's limitations." *Kester v. Colonial Manor of Custer,* 1997 SD 127, ¶ 45, 571 N.W.2d 376, 383 (emphasis in original) (citations omitted). The jobs recommended by Employer's vocational expert, Tom Karrow, included clerk positions (desk, sales, customer service, counter), as well as cashier, ticket seller, and night auditor jobs. Karrow testified at the hearing and did not disagree with Dr. Meiners that a hotel desk clerk position would be unsuitable for Kurtz. Nonetheless, when asked what suitable opportunities were available at the time of the hearing, the jobs Karrow recommended were motel desk clerk and cashier positions, and three of the four jobs were located in Deadwood gaming establishments.[5] Both Drs. Meiners and Berkebile discouraged Kurtz from working as a cashier, typist, or keyboarder. Significantly, Karrow testified that he did not inform prospective employers of Kurtz' physical limitations when he inquired into available jobs.[6] The ALJ heard Karrow's testimony and rejected it. "The trier of fact ... is free to accept all, part, or none of an expert's opinion." *Rank v. Lindblom,* 459 N.W.2d 247, 250 (S.D.1990) (citation omitted).

[¶ 22.] Based on the entire record, we conclude that Kurtz is entitled to odd-lot disability benefits. ALJ, Director, and the circuit court all reached the same conclusion after independent determinations. Were it not for Director's second opinion, our analysis would end here.

[¶ 23.] When Director reviewed the record upon Secretary's remand, he noted:

The transcript, exhibits, videotape, and other submissions made at the initial hearing on this matter have been reviewed. *Because neither the original decision nor the secretarial order of review constitute final orders, the Division is free to adopt or reject as much of the original record as it deems appropriate.* ALJ Bratt made findings and conclusions concerning Claimant's credibility, as well as the credibility of vocational experts Lynn Meiners and Tom Karrow; *absent clear error, those findings and conclusions should not be disturbed.*

(Emphasis added). We hold that these emphasized statements are a correct interpretation of the law, his role, and his scope of review following the petition for review.[7]

[¶ 24.] Director acted under an error of law by later abandoning this position:

I am persuaded that I have misinterpreted the legal effect of Secretary Johnson's review order, and must revise my decision. "Clear error" should properly be taken to mean that the factual determinations made by [ALJ], not just his legal conclusions,

---

5. Dr. Meiners conducted an on-site job assessment of a motel desk clerk's duties. She concluded that those duties involved repetitive motion which Kurtz would be unable to perform. Kurtz looked into some of the available motel jobs and learned that many of the Deadwood motel clerks also acted as cashiers in the gaming operations and were required to handle heavy buckets of coins.

6. Such omissions have led Department and this court to discount Karrow's testimony in the past. See *Kester,* 1997 SD 127 at ¶¶ 44–45, 571 N.W.2d at 383 (rejecting Karrow's testimony when he

recommended jobs without ascertaining whether they were available to someone with claimant's limitations); *Rank v. Lindblom,* 459 N.W.2d 247, 250 n. 1 (S.D.1990) ("[W]hen visiting with these potential employers about claimant, Karrow would leave out significant pieces of information regarding claimant's abilities[.]").

7. Director was, of course, free to conduct another hearing or take additional evidence under SDCL 62–7–16.

were in error, and I am bound by that finding. To me, this means that I should not merely adopt [ALJ's] findings as my own, but to reevaluate them in light of all the information in the record.

Secretary had no authority to dictate the outcome of the review.[8] The plain language of the statute limits him to one of two choices upon the filing of the petition: 1) Deny the petition, or 2) "direct that further hearing be had or additional evidence received." SDCL 62–7–16 (reproduced at n. 1). *Cf.* 2 Am. Jur.2d *Administrative Law* § 394, at 395 (1994) ("Where administrative rules and regulations provide for rehearings, normal rules which apply in the courts for new trial should also apply."). Secretary acted in excess of his authority by declaring the ALJ's decision "clear error." Director compounded this error by reversing his first opinion to conform to Secretary's directive. We cannot affirm Director's second order when it is contrary to his own opinion.

[¶ 25.] Our review of Director's final opinion leaves us with a "definite and firm conviction that a mistake has been made." His final order is 1) clearly erroneous in light of the entire evidence in the record, 2) affected by other error of law, and 3) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. SDCL 1–26–36(4)–(6). In contrast, his first order adopting the ALJ's findings, conclusions, and order is *not* clearly erroneous.

[¶ 26.] We affirm the order of the circuit court.

[¶ 27.] MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

---

8. In fact, the record indicates that he could not conduct the original hearing or the review on remand. Department's hearing officers must be attorneys, must be licensed to practice law in South Dakota, and must apply statutory rules of evidence. SDCL 62–7–12.1; SDCL 1–26–19.

Secretary is a political appointee, serving at the pleasure of the Governor. SDCL 1–32–3. Secretary Craig W. Johnson is not listed as an attorney in the membership directory of the State Bar and there is no showing in this record that he is a licensed attorney.