2002 SD 92

Dorothy J. BROWN, Plaintiff
and Appellee,

v.

DOUGLAS SCHOOL DISTRICT,
Employer and Appellant,

and

Associated School Boards of South Da-
kota Worker's Compensation Trust
Fund, Provider and Appellant.

No. 22050.

Supreme Court of South Dakota.

Argued Feb. 12, 2002.

Decided July 31, 2002.

James D. Leach of Viken, Viken, Pechota, Leach & Dewell, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Karla L. Engle of Tieszen Law Office, Pierre, South Dakota, Attorneys for appellants.

GORS, Acting Justice.

[¶ 1.] Dorothy Brown (Brown) filed a petition for worker's compensation benefits with the South Dakota Department of Labor (Department) seeking an award of permanent total disability. After a hearing, the Department denied Brown's request. Brown appealed and the trial court reversed the Department's order. Brown's employer, the Douglas School District (the School), and the Associated School Boards of South Dakota Workers Compensation Trust Fund appeal. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Brown, age 59 in 2001, worked in the cafeteria at the School for twenty-four years. She began her work for the School in 1973 as a temporary substitute in food service. She was eventually promoted to cafeteria supervisor, and for the last twelve years she was responsible for serving 30 breakfasts a day, 1200 to 1400 hot lunches a day and more than 200 breakfasts and lunches for Head Start children. At all times her work involved physical labor and lifting food.

[¶ 3.] On May 8, 1997, Brown was preparing mashed potatoes. This required Brown to carry a five-gallon pot that was roughly two-thirds full of water to a floor mixer. Brown bent forward and twisted to pour the water, lifting and tilting the pot by the handle. She felt a severe sharp pain in her back. Brown set the pot down and took a seat on a stool that a co-worker placed under her. Brown could not move. The School called the rescue department, an ambulance arrived, and Brown was transported to the hospital emergency room. Brown was diagnosed with compression fractures of the T12 and L1 vertebrae of her back. She was hospitalized for two weeks and subsequently released with a hard cast over her torso.

[¶ 4.] In September of 1997, Brown returned to work for two hours a day. Due to the pain in her back, she only could handle work for two weeks. On February 16, 1998, Brown's rehabilitative physician, Dr. Lawlor, concluded that she had reached maximum medical improvement and would not be able to work. Brown took a medical leave of absence and resigned her employment in May of 1999.

[¶ 5.] Before the May 8, 1997 injury, Brown had other physical problems. She began smoking forty years ago. Over the years she smoked as much as two packs a day. Brown's pulmonologist, Dr. McCafferty, testified that Brown was "terribly addicted" to nicotine. As a result of her smoking, she was diagnosed with chronic obstructive pulmonary disease (COPD) in 1991. COPD is a lung disease with symptoms including destruction of lung tissue,

narrowing of the airways, shortness of breath and difficulty with the flow of air to the lungs. For this disease, Dr. McCafferty prescribed Prednisone, a steroid that, among others, has a side effect of causing osteoporosis. Dr. McCafferty's testimony and medical records established that he clearly explained to Brown that she would have to continue taking Prednisone if she did not quit smoking.

[¶ 6.] Nevertheless, Brown continued to smoke, and in 1994 she was diagnosed with osteoporosis. Osteoporosis is a disease which results in the gradual weakening of the bones and bone fractures. According to Dr. Cynthia Anderson Weaver (Dr. Weaver), Brown's rheumatologist, the bones that are most likely to fracture in a person with osteoporosis are the vertebrae of the spine. In addition to suffering from COPD and osteoporosis, Brown also suffered from shingles, a viral disorder that Brown describes as "extremely" painful. Furthermore, on August 3, 1998, (five months after her work injury) Dr. Lawlor concluded that Brown's x-rays showed a mild compression fracture at L3, which could have occurred prior to her work injury.

[¶ 7.] In the one-year period before Brown's May 8, 1997, injury, she was hospitalized on seven different occasions and visited the emergency room eight times for non-work related problems. Also, less than a month before the injury on May 8, 1997, Brown took a two-month leave of absence from work due to her COPD and shingles. Prior to the May 8, 1997, injury, however, Brown was always able to return to work despite her other health problems. After the May 8, 1997, injury her schedule became sporadic until she was completely unable to work.

[¶ 8.] The Department concluded that Brown was not entitled to permanent total disability benefits because she failed to prove her injury at work was "a major contributing cause" of her disability, pursuant to SDCL 62-1-1(7). Rather, the Department concluded, Brown's osteoporosis, COPD and shingles were "a major contributing cause," and therefore her injury was not compensable. The trial court disagreed, and awarded Brown permanent total disability benefits. The School appeals on the following issues:

1. Whether Brown's work injury was "a major contributing cause" of her disability.

2. Whether the School must file a timely notice of review to obtain a trial court's review of an agency decision.

## STANDARD OF REVIEW

[¶ 9.] The standard of review in an administrative appeal is governed by SDCL 1-26-36. Fact questions are reviewed under the clearly erroneous standard[1] and questions of law are reviewed de novo. *Wendell v. South Dakota Dept. of Transp.*, 1998 SD 130, ¶ 5, 587 N.W.2d 595, 597. We give deference, *Watertown Coop. Elevator Assn. v. State Dept. of Revenue*, 2001 SD 56, ¶ 10, 627 N.W.2d 167, 171, and great weight to the agency or hearing officer on fact questions. *Goebel v. Warner Transp.*, 2000 SD 79, ¶ 10, 612 N.W.2d 18, 21; *Kurtz v. SCI*, 1998 SD 37, ¶¶ 9–10, 576 N.W.2d 878, 881–82; *Sopko*, 1998 SD 8 at ¶ 6, 575 N.W.2d at 228. Findings of fact are clearly erroneous when the reviewing court has a definite and firm conviction that a mistake has been made. *Goebel*, 2000 SD 79 at ¶ 10, 612 N.W.2d at 21; *Kurtz*, 1998 SD 37 at

---

1. The proper review of fact determinations by an administrative agency is clearly erroneous, not substantial evidence. *Sopko v. C & R Transf. Co.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228.

¶ 9, 576 N.W.2d at 882; *Sopko*, 1998 SD 8, at ¶ 6, 575 N.W.2d at 228. When factual determinations are made on the basis of documentary evidence, however, we review the matter de novo, unhampered by the clearly erroneous rule. *Watertown Coop. Elevator*, 2001 SD 56 at ¶ 10, 627 N.W.2d at 171; *Kurtz*, 1998 SD 37 at ¶ 10, 576 N.W.2d at 882. Mixed questions of fact and law are fully reviewable. *Herr v. Dakotah, Inc.*, 2000 SD 90, ¶ 11, 613 N.W.2d 549, 552.

[¶ 10.] In this case, the Department's decision was made on deposition testimony from the doctors and experts. The only live testimony came from claimant Brown.[2] The trial court applied the proper de novo standard of review. The trial court made findings of fact and conclusions of law that are required when an administrative decision is reversed, in order to enable the Supreme Court to review the trial court's reasoning. SDCL 1–26–36; *Schroeder v. Dept. of Social Services*, 529 N.W.2d 589, 591–92 (S.D.1995).

[¶ 11.] Brown argues that the standard of review on appeal from the trial court's reversal of the agency decision is the clearly erroneous standard set forth in SDCL 15–6–52(a). In other words, the trial court reviews the agency decision de novo, unhampered by the clearly erroneous rule, but this Court would be bound to review the trial court's findings of fact under the clearly erroneous standard.

[¶ 12.] The Supreme Court's review of a trial court's findings of fact was amended in 2000 when the legislature revised SDCL 15–6–52(a). This Court noted the following in *Parmely v. Hildebrand*:

> This case was presented to the trial court through prepared written statements of facts, exhibits, and depositions.

In such a situation, we would have previously reviewed a trial court's findings of fact de novo. However, last year the legislature amended SDCL 15–6–52(a), which now requires all findings of fact, "whether based on oral or documentary evidence" to be reviewed under the clearly erroneous standard. SL 2000, ch. 91, § 1. Therefore, the trial court's findings of fact will not be set aside unless "we are left with a definite and firm conviction that a mistake has been made."

2001 SD 83, ¶ 6, 630 N.W.2d 509, 512 (internal citations omitted). Brown buttresses her argument with SDCL 1–26–37, which provides:

> An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the [trial] court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

Brown contends that the "same deference to findings of fact" is the clearly erroneous standard as set forth in SDCL 15–6–52(a). We disagree.

[¶ 13.] The question of whether the new standard of review applied to trial court appellate review of an administrative decision was alluded to in *Webster Educ. Ass'n v. Webster Sch. Dist.*, where this Court stated:

> Our legislature has recently revised our standard of review for agency decisions: "Findings of fact, whether based on oral or documentary evidence, may not be

---

**2.** Although Brown testified at the Department's hearing, neither the Department nor the trial court entered findings as to Brown's credibility.

set aside unless clearly erroneous[.]" SDCL 15–6–52(a). Since the parties stipulated to the facts before the DOL, the issues presented to the circuit court were solely legal issues to be reviewed de novo.

2001 SD 94, ¶ 4, 631 N.W.2d 202, 204 (additional citations omitted). However, Justice Konenkamp noted in his concurring opinion, "[t]he majority opinion reaches the correct conclusion, and I concur with it. The parties agreed to de novo appellate review. But whether we apply the standard of review from SDCL 15–6–52(a) to agency fact findings on disputed or undisputed facts must be left for another day." *Id.* at ¶ 16, 631 N.W.2d at 206 (Konenkamp, J., concurring).

[¶ 14.] That day has come.

■ [¶ 15.] We reject Brown's argument that we are to ignore the Department's findings and review the trial court's findings under the clearly erroneous standard. SDCL 15–6–52(a) does not apply to a trial court's review of agency decisions for two reasons.

[¶ 16.] First, the beginning sentence of 15–6–52(a) provides: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall" make findings of fact. The first sentence describes a court trial where evidence is heard, not an administrative appeal in trial court where evidence is not heard. Therefore, SDCL 15–6–52(a) does not relate to trial court appellate review. Instead, SDCL 1–26–37 requires the same deference afforded findings of fact in "other appeals from the [trial] court."

■ [¶ 17.] Second, when there are no witnesses in a trial court appellate review of an agency decision, the trial court is reviewing the cold record, not determining the credibility of live witnesses. When it comes to an appeal, based on documents, depositions and transcripts, we can read the cold record just as well as the trial court. Justice Morgan wrote the following in *Zeig v. South Dakota Dept. of Labor:*

We next examine the issue of whether the decision by the appeal referee was clearly erroneous. SDCL 1–26–36. The trial court, in its memorandum opinion, found that "[g]iving the agency findings great weight, the appeals referee's decision, which was affirmed by the Secretary of the Department of Labor, was not clearly erroneous in light of the entire evidence in the record." *We are not bound by the trial court's reading of the record. We can read it for ourselves.*

337 N.W.2d 435, 439–40 (S.D.1983) (emphasis added). The standard of review in an appeal to the Supreme Court from a trial court's appellate review of an administrative decision is de novo: unaided by any presumption that the trial court is correct. *Kurtz,* 1998 SD 37 at ¶ 10, 576 N.W.2d at 882 (citing *Zoss v. United Bldg. Centers, Inc.,* 1997 SD 93 at ¶ 6, 566 N.W.2d 840, 843).

### ANALYSIS AND DECISION

[¶ 18.] **1. Whether Brown's work injury was "a major contributing cause" of her disability.**

■ [¶ 19.] Before Brown can collect any benefits under South Dakota's workers' compensation statutes, she must establish a causal connection between her injury and her employment. *Johnson v. Albertson's,* 2000 SD 47, ¶ 22, 610 N.W.2d 449, 453. Brown must prove her employment was "a major contributing factor" to her injury, pursuant to SDCL 62–1–1(7). *Id.* at ¶ 22, 610 N.W.2d at 454. This statute defines "injury" as one that arises:

out of and in the course of employment.... An injury is compensable only if it is established by medical evidence, subject to the following conditions:

(a) No injury is compensable unless the employment or employment related activities are *a major contributing cause of the condition* complained of; or

(b) If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains *a major contributing cause* of the disability, impairment, or need for treatment.

SDCL 62–1–1(7) (emphasis added). *"Injury* is the act or omission which causes the loss whereas *condition* is the loss produced by an injury, the result." *Grauel v. South Dakota Sch. of Mines and Technology*, 2000 SD 145, ¶ 9, 619 N.W.2d 260, 263 (emphasis in original) (citing *Steinberg v. South Dakota Dep't of Military & Veterans Affairs*, 2000 SD 36, ¶ 10, 607 N.W.2d 596, 600)). In short, in order for Brown to prevail she must show *both:* (1) that her injury arose out of and in the course of employment, and (2) that, in this case involving a preexisting disease or condition, her employment or employment related injury is and remains "a major contributing cause" of her disability. *Id.* "This causation requirement does not mean that the employee must prove that [her] employment was the proximate, direct, or sole cause of [her] injury; rather the employee must show that [her] employment was a *'contributing factor '* to [her] injury." *Arends v. Dacotah Cement*, 2002 SD 57, ¶ 13, 645 N.W.2d 583 (citing *Gilchrist v. Trail King Indus., Inc.*, 2000 SD 68, ¶ 7, 612 N.W.2d 1, 4.)

[¶ 20.] The parties do not dispute that Brown's injury arose out of the course of her employment. Thus, our only inquiry on appeal is whether her employment was a major contributing cause of her disability. In this case, all of the medical evidence was presented through depositions. To determine if Brown established by a preponderance of medical evidence that her employment was a major contributing cause of her disability, we review the medical testimony de novo.

[¶ 21.] Dr. Lawlor opined that the compression fracture at T12–L1 was and remained a major contributing cause of Brown's condition, disability and need for treatment. Testifying to the cause of Brown's injury, Dr. Lawlor stated: "I would consider the twisting motion to have been the major contributing cause and the osteoporosis a minor contributing cause." He explained: "Prior to the injury she was working even though she had COPD and was getting along reasonably well, though with very little tolerance for increased physical activity. Since that time, the combination of her injury and the subsequent pain has left her unable to tolerate that level of activity." With respect to her osteoporosis, Dr. Lawlor testified:

We have to go back to the activity that precipitated [Brown's] current symptoms. And while the osteoporosis was present the day before and a week before, it was the activity that caused her symptoms. An example would be if someone had osteoporosis and was involved in a car wreck and suffered a compression fracture. I would say that the car wreck was the major cause of the compression fracture, the osteoporosis would have been a contributing cause. It was that activity. Similarly with her it was the activity that she did that has left her in her current state of pain.

[¶ 22.] The Department relied on Dr. Dale Anderson's testimony. Dr. Anderson is an orthopedic surgeon the School hired to conduct an independent medical examination and review of Brown's records. Like Dr. Lawlor, Dr. Anderson concluded

that Brown sustained a compression fracture of her spine at T12–L1 while at work on May 8, 1997. Where the doctors diverged was whether Brown's work activities were or remain "a major contributing cause" of Brown's disability. Dr. Anderson testified as follows:

> Q: [D]o you have an opinion as to whether the compression fracture at T12–L1 that was diagnosed on or around May 8, 1997, whether that is a major contributing cause of Ms. Brown's current inability to work?
>
> A: I do not believe the compression fracture that occurred to her at work in 1997 is *the major contributing factor* to be unable to work now.
>
> Q: [D]o you have an opinion as to whether the compression fracture T12–L1 ... is or remains a major contributing cause of Ms. Brown's current need for treatment?
>
> A: Her current need for treatment I think is primarily pulmonary, and it is not related to her compression fracture that she sustained in 1997.

(emphasis added). Dr. Anderson elaborated, "[h]er employment is not the cause for her treatment at the present time or her disability at this time.... I think it's the smoking, the osteoporosis, the Prednisone, that combination is what's causing her impairment at the present time." Dr. Anderson also explained that Brown could have sustained a compression fracture from traumas as slight as sneezing or coughing because her bones were so weak from osteoporosis.

 [¶ 23.] Brown did not have to prove that the work injury was "the" major contributing cause, only that it was "a" major contributing cause,[3] pursuant to SDCL 62–1–1(7). In 1995, the statute was proposed to the Legislature in Senate Bill 234 with the wording "the major contributing cause." However, the Legislature rejected this more restrictive standard and amended "the" to "a" major contributing cause. 1995 Senate Journal at 633–34; 1995 House Journal at 977.

[¶ 24.] Both Dr. Lawlor and Dr. Anderson applied the wrong standard. Dr. Lawlor testified that Brown's work injury on May 8, 1997, was "the major contributing cause" of her disability. Despite being asked whether Brown's injury on the job was "a major contributing cause," Dr. Anderson testified that Brown's injury on the job on May 8, 1997, was "not ... the major contributing factor" in Brown's disability. Both doctors used a standard that was too high. All Brown had to prove was that her injury was "a major contributing factor."

 [¶ 25.] In this case, application of the higher standard by both doctors works to Brown's advantage. Dr. Anderson's opinion is less persuasive because he holds Brown to a higher standard than the law requires. Conversely, Dr. Lawlor's opinion, in which he uses the higher standard, is more persuasive. According to Dr.

---

**3.** This distinction is similar to negligence cases, where the plaintiff does not have to prove that the defendant's negligence was "the proximate cause" of the injury but that it was "a proximate cause." *See Schmeling v. Jorgensen*, 77 S.D. 8, 19, 84 N.W.2d 558, 564 (1957)(stating, "[a]nd, of course, negligence, to render a person liable, need not be the sole cause of injury, but it is sufficient that his negligence concurring with one or more efficient negligent acts of third persons, is a proximate cause of the injury." (citing *Lapp v. J. Lauesen Co.*, 67 S.D. 411, 293 N.W. 536; *Rowan v. Becker*, 73 S.D. 273, 41 N.W.2d 836; and *Hjermstad v. Petroleum Carriers*, 74 S.D. 406, 53 N.W.2d 839). *See also Northwestern Bell Tel. Co. v. Henry Carlson Co.*, 83 S.D. 664, 669, 165 N.W.2d 346, 349 (1969)) (stating, "it is a fundamental rule that negligence to be actionable must be a proximate cause of the damage.").

Lawlor, not only is Brown's injury "*a major contributing cause*," but "*the* major contributing factor." Brown has not only met but also exceeded her burden of proof in this case.

[¶ 26.] The School also argues that since Brown had non-work related compression fractures both before and possibly after May 8, 1997, that this indicates Brown's work is not a major contributing cause of her condition. Dr. Anderson admitted on cross-examination, however, that any compression fractures prior to May of 1997 were completely asymptomatic and did not interfere with her ability to work.

[¶ 27.] The School also relies on the testimony of Dr. Weaver, who stated "patients who have multiple fractures are more likely to have chronic pain. They have more deformity of their back, more mechanical changes in their back, and therefore, are going to have more problems." Dr. Weaver did not, however, testify that this occurs with every patient or that it occurred to Brown. The trial court found that "[n]o medical evidence shows that any subsequent fractures sustained by Brown were any more significant in creating her inability to work than the May 8, 1997, fractures." We agree. After reviewing the doctors' deposition testimony, the facts of this case clearly demonstrate that the *disabling* fractures occurred on May 8, 1997.

[¶ 28.] This Court stated in *Steinberg* that "[i]f the injured employee can prove the injury arose out of and in the course of employment, and that employment related incident was a major contributing cause of the resulting condition, the employer's liability is established." *Steinberg*, 2000 SD 36 at ¶ 29, 607 N.W.2d at 606. Brown has shown both requirements. The trial court did not err in reversing the Department's decision and awarding Brown permanent disability benefits.

[¶ 29.] **2. Whether the School must file a timely notice of review to obtain a trial court's review of an agency decision.**

[¶ 30.] The School argues that the trial court abused its discretion when it denied the School's motion to file its notice of review and granted Brown's motion for dismissal on the School's additional statement of the issues. Since this is an issue of law, this Court's standard of review is *de novo*. *Harksen v. Peska*, 2001 SD 75, ¶ 9, 630 N.W.2d 98, 101.

[¶ 31.] On October 30, 2000, Brown served her notice of appeal. The School filed an additional statement of issues on November 7, identifying the Department's denial of a willful misconduct defense and award of benefits for an impairment rating. However, the School failed to file a timely notice of review as required by SDCL 1–26–36.1. The statute provides that the School "may obtain review of a final decision, ruling or action of any agency which may adversely affect [it] by filing a notice of review with the clerk of circuit court *within twenty days* after service of the notice of appeal." SDCL 1–26–36.1 (emphasis added). On November 29, after more than twenty days had passed since service of the notice of appeal, Brown moved to dismiss the School's additional statement of issues. In response, the School filed an application for relief of default and extension of time. The trial court granted Brown's motion and denied the School's application. The trial court held that the School waived its right to obtain review and that the trial court was without jurisdiction to hear the issues the School sought to have reviewed.

[¶ 32.] The School argues that the statute's use of the word "may" means that the School's *filing of a notice of review* is optional. We disagree. The word

"may" in this statute means that the School may *seek review* of the Department's decision. While the School is not *required* to seek review, if it chooses to do so, it must file "within 20 days after service of notice of appeal." SDCL 1–26–36.1. The School waited more than twenty days to seek review, and therefore failed to meet this mandatory deadline.

[¶ 33.] The School also argues that the trial court should have allowed it to file a notice of review pursuant to SDCL 1–26–30.5, which provides:

> In the interest of expediting decisions in cases of pressing concern to the public or litigants, or for good cause shown, the circuit court *may* suspend the requirement provisions of these rules on application of a party or on its own motion and *may* order proceedings in accordance with its direction.

(emphasis added). This statute is clear that it is within the discretion of the trial court to suspend the requirement provisions. Further, the issue does not involve expediting a decision or other good cause. The School defaulted on a mandatory deadline.

[¶ 34.] The School finally argues that its failure to timely file a notice of review should be excused because it substantially complied with 1–26–36.1. We disagree. Full compliance is required. *Schreifels v. Kottke Trucking*, 2001 SD 90, ¶ 10, 631 N.W.2d 186, 189 (citing *Matter of Groseth Intern., Inc.*, 442 N.W.2d 229 (S.D.1989)). The School, therefore, has shown no basis for overturning the trial court's refusal to relieve the School from its default.

[¶ 35.] We affirm.

[¶ 36.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.

[¶ 37.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.