2003 SD 126

**ESTATE OF Marcella M. GASPAR, Jerome C. Baumberger and Vincent Baumberger, co-personal representatives, Plaintiffs and Appellees,**

v.

**VOGT, BROWN & MERRY, a South Dakota partnership engaged in the practice of law, Defendant and Appellant.**

No. 22690.

Supreme Court of South Dakota.

Considered on Briefs Aug. 25, 2003.

Decided Oct. 15, 2003.

Rehearing Denied Nov. 18, 2003.

Clair R. Gerry, Brian J. Stuart of Stuart, Gerry & Schlimgen, Sioux Falls, South Dakota, Attorneys for plaintiffs and appellees.

Rory King of Bantz, Gosch & Cremer, Aberdeen, South Dakota, Attorneys for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] In preparing wills for a husband and wife who wished to disinherit each other so that their children by previous marriages would receive their estates, the attorney failed to advise that waivers of their respective spousal elective shares would be necessary to accomplish their testamentary wishes. After the wife died, the husband obtained his elective share of half the wife's estate. The wife's estate then brought a legal malpractice action against the attorney. In finding against the attorney, the circuit court ruled in a bench trial that the loss to the wife's estate was proximately caused by the attorney's negligence. On appeal, the attorney questions whether the trial court failed to consider various contingencies in deciding that the proximate cause of the loss was the attorney's deficient advice. Because the court was not required to speculate on all

possibilities in considering proximate cause, we affirm.

## Background

[¶ 2.] Marcella and Ray Gaspar married in 1965. Both were previously married and had children from those marriages. They had no children together. At the time of their marriage, each held an estate of approximately equal value. Because of their desire to preserve their property for their children, they maintained separate finances. Nonetheless, during their marriage, Marcella expected Ray to support her completely. She believed that it was a husband's duty to support his wife. Ray assented. For the next thirty-two years of marriage, he expended most of his income and assets, while Marcella increased her wealth.

[¶ 3.] Attorney Max Merry represented both Marcella and Ray. In 1981, shortly after South Dakota enacted the right of the spousal elective share, Merry drafted a will for Marcella. The intent of the will was to disinherit Ray. At that time, Marcella's and Ray's estates still had approximately equal worth. In 1987, Merry drafted a similar will for Ray that disinherited Marcella. Throughout this time, Merry provided other legal services to Marcella and Ray. In 1991 and 1996, Merry drafted a subsequent will and codicil for Marcella. Neither of these made any provision for Ray, leaving no doubt of Marcella's desire to disinherit him.

[¶ 4.] Marcella died on January 12, 1997. From the time of her 1981 will until her death, her wealth had grown to $498,794.60, ten times the $45,895.33 in Ray's estate. Despite their mutual testa-mentary intent to disinherit each other, Ray petitioned for and received under SDCL 29A-2-202 his surviving spouse's elective share. His entitlement came to fifty percent or $226,449.54.

[¶ 5.] Marcella's estate then brought this action against Merry, claiming that his negligence resulted in a loss of $226,449.54. Merry admitted that he failed to inform Marcella that without a waiver signed by Ray, the intent of her will could be defeated if Ray decided to take an elective share of her estate.[1] In a bench trial, the circuit court found that Merry owed a duty to Marcella, that he breached that duty, and that his breach caused her estate to sustain actual damages in the amount of $226,449.54. On appeal, Merry raises the following issues: (1) "Whether the trial court erred by refusing to consider clearly relevant evidence on the issue of proximate cause, dismissing it as speculative, and whether the decision of the trial court on that issue was clearly erroneous." (2) "Whether, if Ray Gaspar had signed an unconditional waiver of his elective share rights in 1981, such a postnuptial agreement would have been enforceable and whether such agreement would have been against public policy." (3) "Whether the statute of limitations bars plaintiff's claim based upon the alleged negligence of defendant with respect to the 1981 will."

## 1. Proximate Cause

[¶ 6.] Causation is usually a fact question for the fact finder except when there are no differences of opinion on the interpretation of the facts. *Weiss v. Van Norman*, 1997 SD 40, ¶ 13, 562 N.W.2d

---

1. Merry testified that he believed he informed Marcella of Ray's right to take an elective share of her estate. He recalled that Marcella's response to his statement was, "He wouldn't do that would he?" According to Merry, the conversation was brief and no details were discussed. Jerome Baumberger, Marcella's son, was present during discussion of matters involving Marcella's finances. He did not recall any conversation about the elective share.

113, 116. We review questions of fact under the clearly erroneous standard. *A.P. & Sons Construction v. Johnson,* 2003 SD 13, ¶ 9, 657 N.W.2d 292, 294. In a case for legal malpractice, it is the plaintiff's burden to prove:

1. An attorney-client relationship giving rise to a duty;
2. the attorney, either by an act or a failure to act, violated or breached that duty;
3. the attorney's breach of duty proximately caused injury to the client; and
4. the client sustained actual injury, loss, or damage.

*Ford v. Moore,* 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852 (citation omitted). At issue here is whether Merry's negligence was the proximate cause of the loss to Marcella's estate. A proximate or legal cause is a cause that produces a result in a natural and probable sequence and without which the result would not have occurred. Such cause need not be the only cause of a result. It may act in combination with other causes to produce a result. SDCL 21-3-1; *Musch v. H–D Coop., Inc.,* 487 N.W.2d 623 (S.D.1992); *see also* S.D. Pattern Jury Instruction 15-01.

[¶ 7.] In this case, the estate had to prove that but for Merry's negligent failure to inform Marcella of the elective share and the need for a waiver, Marcella's estate would not have suffered a loss. Merry argues that the trial judge refused to consider, as speculative, evidence on the issue of proximate causation and that such refusal was clearly erroneous. First, to clarify this question, there is no indication in the record that the court refused to hear certain evidence. The court, however, declined to engage in all the hypotheses Merry offered to suggest that his error would not have caused the loss to the estate. Merry states in his appellate brief:

> It is the position of the appellant that the trial court refused to consider, as speculative, a great deal of very relevant evidence on that issue, much of it undisputed, including the all important advice that an independent attorney would have given Ray Gaspar. For some reason, the trial court focused instead upon a very few items of disputed evidence, and dismissed, as speculative, a raft of clearly relevant evidence, much of it undisputed.

Merry contends that the trial judge refused to consider what Ray would have done if he had received proper advice from a competent attorney. Merry points to the testimony of the expert witnesses who both stated they would have advised a client in Ray's position not to sign a waiver.[2] But this misses the heart of the ques-

---

2. Attorney Richard Kolker was called as an expert witness by the plaintiff. Mr. Kolker testified that if he was aware of all the circumstances that had come to light since 1981, he would not have advised Ray Gaspar to sign a waiver. *See In re Estate of Jetter,* 1997 SD 125, ¶ 16, 570 N.W.2d 26, 29 n.5. However, Mr. Kolker also testified that had Ray Gaspar refused to sign a waiver, there were other options available that would accomplish Marcella Gaspar's intent of having her estate go to her children. Mr. Kolker stated that it would be the duty of an attorney to do what was legally necessary to accomplish Marcella Gaspar's testamentary purpose. Attorney Thomas H. Foye testified as an expert for the defense. In his testimony, he agreed that "a postnuptial agreement that would have required Ray Gaspar to pay all the expenses of the parties, allowing Marcella Gaspar to save her income, and yet required Ray Gaspar to waive his elective share," would not have been a *conscionable* postnuptial agreement. Therefore, he explained that his recommendation to a client in Ray Gaspar's position would have been against signing the waiver. He further stated that in his experience it would be difficult, if not impossible, to get a client such as Marcella Gaspar to satisfy the requirement of complete disclosure. Howev-

tion. The primary issue was whether Ray, had he sought advice, would have signed a waiver regardless of what a competent attorney might have told him. The evidence within the record does not clearly outweigh the trial judge's finding that Ray would have signed a waiver. In his memorandum opinion, the judge concluded that Ray would have signed a waiver because: (1) the estates of Marcella and Ray were approximately the same at the time; (2) Ray had a similar desire to protect his property, as evidenced by his will disinheriting Marcella; and (3) Marcella was willing to end the marriage had Ray refused to sign a waiver.

[¶ 8.] Merry highlights a sentence from the memorandum opinion: "The Court cannot indulge in endless and pure speculation as to what 'might have' or 'could have' happened." Indeed, a trier of fact should refrain from unwarranted speculation, either for or against a litigant. If, for example, equally probable causes of loss appear, for one or more of which the defendant is not responsible, the fact finder should not guess, speculate, or surmise about the actual cause. *See Phillips–Smith Specialty Retail Group v. Parker Chapin Flattau & Klimpl, LLP*, 265 A.D.2d 208, 696 N.Y.S.2d 150, 151–52 (1999); *Tilden v. Profeta & Eisenstein*, 236 A.D.2d 292, 654 N.Y.S.2d 10, 10 (1997). In dealing with probabilities, the court had only to decide what was most likely, not what might have happened based on whatever counsel could envision as imaginable. That the facts of the case could not lead a reasonable trier of fact to believe that Marcella and Ray would have signed waivers at the time is refuted by Merry's own testimony: "there would be

no reason that either party wouldn't sign the waiver in 1981 because they wanted their estate, their separate estates, to go to their previous children...." In sorting out the evidence, the trial court was within its discretion in refusing to indulge in the speculation Merry advanced.

## 2. Valid Postnuptial Agreement

█ [¶ 9.] Even if Ray had signed an unconditional waiver of his elective share rights in 1981, Merry contends that such a postnuptial agreement would not have been enforceable and would have been against public policy. We considered, whether a postnuptial agreement could be valid and enforceable in *Estate of Gab*, 364 N.W.2d 924 (S.D.1985). In that decision, we held the agreement to be "lawful." *Id.* at 925. In *Gab*, the parties had several children from previous marriages. *Id.* To ensure that the assets from each estate would go only to their children from the previous marriages, both spouses executed wills disinheriting the other. *Id.* Later, the parties signed a postnuptial agreement. *Id.* In effect, the agreement prevented the surviving spouse from petitioning for an elective share of the deceased spouse's estate. *Id.* In holding the agreement valid, we reasoned that so long as the extent and nature of the decedent's property was revealed, and so long as the agreement was entered into "freely and for good consideration," a postnuptial agreement could survive the strict scrutiny standard required of such an agreement. *Id.* at 926.

[¶ 10.] Merry would have us hold that any postnuptial agreement entered into by Marcella and Ray would not have survived

---

er, Mr. Foye agreed that had an effective waiver been signed by Ray Gaspar in 1981, the waiver would have still been in effect at the time of Marcella Gaspar's death. Finally, Mr. Foye negated the relevance of potential

alternatives to the waiver of the elective share. While he did not specifically state that there were no alternatives to the waiver, he did state that the alternatives would not be as desirable as the waiver.

application of the strict scrutiny standard. Using the findings of the trial judge, as we must because they were not clearly erroneous, there is no reason to believe that an elective share waiver would not have survived strict scrutiny. In his decision, the judge found that Ray would have entered into the agreement voluntarily and that there was no evidence that Marcella was predisposed to fraud or deceit to accomplish the agreement.[3] These are the exact criteria that we laid out in *Gab*. Consequently, we believe that based on the findings of the trial judge, the conclusion, "[t]hat the waiver would have been effective against future changes in the law and in the estates of the parties," is not in contravention of our previous holdings.

[¶ 11.] Merry asserts that had Marcella required Ray to sign an absolute waiver by threat of divorce while insisting that Ray pay most of the living expenses, such a waiver would be a "violation of the public policies behind the marital support laws and the elective share laws." "Marcella," Merry maintains, "had a continuing obligation, throughout the course of her marriage to Ray, to take no deliberate action which would deprive Ray of proper support, including food, clothing, shelter or medical attendance, or which would leave him, then, *or in the future,* in a destitute condition."

[¶ 12.] As foundation for his proposition, Merry cites SDCL 25–7–1 and 25–7–4. However, the language of these statutes does not contemplate the situation presented in this case. SDCL 25–7–1 provides: "*A person shall support himself or*

herself and his or her spouse out of his or her property or by his or her labor." Likewise, SDCL 25–7–4 commands:

> Every person with sufficient ability to provide for his or her spouse's support, or who is able to earn the means of the spouse's support, who *intentionally* abandons and leaves his or her spouse in a destitute condition, or who *refuses* or *neglects* to provide such spouse with necessary food, clothing, shelter or medical attendance, unless, by the spouse's misconduct, he or she is justified in abandoning the spouse or failing to so provide is guilty of a Class 6 felony.

(Emphasis added.) Merry's interpretation of the statute would have us construe a postnuptial agreement as containing the requisite intention, refusal, or neglect contemplated in the statute. This we decline to do.

### 3. Statute of Limitations

[¶ 13.] In his last issue, Merry argues that the statute of limitations bars the estate's claim with respect to the 1981 will. "[A] claim that a cause of action is time-barred is an affirmative defense." *Huron Center, Inc. v. Henry Carlson Co.,* 2002 SD 103, 11, 650 N.W.2d 544, 547 (citing *Wolff v. Sec. of S.D. Game, Fish and Parks Dept.,* 1996 SD 23, 14, 544 N.W.2d 531, 533–34). Merry did not aver the statute of limitations in his pleadings.

[¶ 14.] Merry contends that Marcella's estate based its claim on the 1981 will only after trial. However, the record shows that the 1981 will was part of the claim for negligence. During the trial, the attorney

---

**3.** Merry cites *Gabaig v. Gabaig* as standing for the proposition that an agreement can never be voluntary under the threat of divorce. 717 P.2d 835, 841 (Alaska 1986). In *Gabaig,* the trial court found that the husband actively discouraged the wife from consulting with an attorney and repeatedly threatened divorce, and therefore there was no arm's length bargaining. It further concluded that the hus-

band did not fully disclose his assets; therefore, there was no full disclosure. While the husband's repeated threats of divorce played some role in the court's decision, the court also had evidence of the husband's active dissuasion of the wife's need to seek counsel regarding the agreement. Furthermore, the *Gabaig* Court had to deal with the husband's unwillingness to disclose all his assets.

for Marcella's estate posed a question to its expert witness, "In your opinion, does the malpractice in this case and the damages associated therefrom, stem back to the failure of [Merry] in 1981 to get an elective share waiver from Ray?" Merry's attorney objected on the ground that the question called for speculation and was beyond the capacity of the witness. The trial judge sustained the objection stating, "I think that is a factual determination I have to make." Thus, the record reflects that Merry had notice that the 1981 will would be part of the basis for assessing his negligence.

[¶ 15.] Merry's argument is further undermined by his not having asserted this affirmative defense concerning the testamentary instrument Marcella signed in 1991. The statue of limitations bars any claim for legal malpractice not brought "within three years after the alleged malpractice...." SDCL 15–2–14.2 (2001). Marcella's estate did not bring the current action until February 1998. We will ordinarily decline to review issues not properly presented to the trial court.[4] *Knudson v. Hess,* 1996 SD 137, ¶ 8, 556 N.W.2d 73, 75. Because the 1981 will was in issue and Merry failed to assert the statute of limitations, we hold that he is barred from raising that issue on appeal.

[¶ 16.] Affirmed.

[¶ 17.] GILBERTSON, Chief Justice, and SABERS and MEIERHENRY, Justices, concur.

[¶ 18.] ZINTER, Justice, deeming himself disqualified, did not participate.

---

4. The estate contends that even if the statute of limitations is properly before us, the statute was tolled by Merry's continuing representation and fraudulent concealment. We need not address these issues.