#24138-a-JKM

**2007 SD 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| THOMAS VANSTEENWYK, | Claimant and Appellee, |
| v. | |
| BAUMGARTNER TREES AND LANDSCAPING, | Employer and Appellant, |
| and | |
| FARMERS INSURANCE GROUP, | Insurer and Appellant. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

| | |
|---|---|
| RONALD A. PARSONS, JR. A. RUSSELL JANKLOW of Johnson, Heidepriem, Miner, Marlow and Janklow Sioux Falls, South Dakota | Attorneys for claimant and appellee. |
| ERIC C. BLOMFELT JEREMY D. NAUMAN of Eric C. Blomfelt & Associates, P.C. Windsor, Colorado | Attorneys for employer, insurer and appellants. |

\* \* \* \*

ARGUED ON JANUARY 9, 2007

OPINION FILED **04/11/07**

#24138

MEIERHENRY, Justice

[¶1.]     Thomas VanSteenwyk (VanSteenwyk) sought workers' compensation benefits for an injury he received while working for Baumgartner Trees and Landscaping.  VanSteenwyk, an admitted regular marijuana user, had smoked marijuana the evening before the day of his workplace injury.  Baumgartner and its insurer, Farmers Insurance Group (collectively referred to as Baumgartner), opposed the granting of benefits and argued that VanSteenwyk's off-duty illegal drug use constituted willful misconduct pursuant to SDCL § 62-4-37, which would bar him from receiving workers' compensation benefits.  The parties agreed to bifurcate the issues and address the issue of willful misconduct first.  Based on the evidence, the South Dakota Department of Labor (Department) concluded that Baumgartner had not met its burden of proving that VanSteenwyk's willful misconduct proximately caused his injury.  Baumgartner appealed the Department's ruling to circuit court.  The circuit court affirmed the Department's ruling.  We affirm the Department and circuit court.

## FACTS AND BACKGROUND

[¶2.]     VanSteenwyk began working for Baumgartner as a landscaper and laborer one year prior to his injury on April 30, 2004.  Part of VanSteenwyk's job included operating a skid loader.  He was injured while attaching a bucket to the front of the skid loader.  Attaching the bucket required a set of manual procedures and safety precautions.  Baumgartner claims that VanSteenwyk's off-duty marijuana use impaired his ability to perform the procedures or heed the safety precautions.

[¶3.]        VanSteenwyk admitted that he used marijuana on a daily basis for the past fifteen to twenty years.  Although VanSteenwyk never smoked marijuana before or during work hours, he routinely smoked marijuana after he completed work and before going to bed.  Thus, the day before the injury following his usual routine, VanSteenwyk smoked marijuana.  After completing a full work-day, VanSteenwyk and his supervisor, Troy Daggett (Daggett), went to Daggett's house to smoke marijuana and relax, just as they had done for the past year.  After spending 30 to 60 minutes at Daggett's house, VanSteenwyk returned to his home in Canistota, South Dakota, where he took a shower, had dinner with his family, watched television and put his children to bed.  Prior to going to bed between midnight and 12:30 A.M., he once again smoked marijuana.  VanSteenwyk stated that he smoked a total of three to five joints of marijuana that evening.

[¶4.]        The next day, VanSteenwyk picked up Daggett for work at 8:00 A.M.  They went to Baumgartner's shop and then proceeded to their worksite.  Brian Baumgartner, company owner, joined them at the worksite around 9:00 A.M. and worked with them most of the morning.  VanSteenwyk was working with a skid loader as he often did as part of his duties.  Around 11:30 A.M., Daggett asked VanSteenwyk to remove the fork from the skid loader and attach the bucket so they could clean-up the worksite.  Although Daggett believed two people should engage in this task, Baumgartner had given Daggett orders that only one person should be involved in changing the bucket in order to save man-hours.

[¶5.]        The skid loader came equipped with various attachments for the hydraulic arm or boom, including a fork for lifting and a metal bucket for digging,

loading and moving materials. The skid loader had various safety mechanisms to prevent injury while changing attachments. First, there were locking pins under the hydraulic arm that prevented it from being lowered beyond the height of the pin. However, Baumgartner had not instructed his employees to use the locking pins and normally did not use them himself. Second, the seat on the skid loader had a pressure switch, which turned off the hydraulics when there was no pressure on the seat. Third, the skid loader was equipped with a seatbelt safety system. The safety system would not let the loader start unless the seatbelt was securely buckled. If the seatbelt became unbuckled, the hydraulics would shut down. Baumgartner, however, had disengaged the seatbelt safety system and had installed a manual toggle switch in its place. Consequently when the pressure switch was triggered because of no pressure on the seat and the hydraulics shut off, the operator needed to sit on or apply pressure to the seat and reset the toggle switch in order to reengage the hydraulics.

[¶6.] Proceeding with his task of removing the fork and attaching the bucket, VanSteenwyk drove the skid loader to the bucket. When VanSteenwyk slid the bucket onto the skid loader's hydraulic arm, the locking mechanism would not engage. On this particular skid loader, attaching the bucket could be difficult because the mechanism to which the bucket attached had previously been cracked and welded. The welding left the bucket slightly warped and off-center, making it difficult to slide the bucket onto the hydraulic arm and to lock it into place. Consequently, Baumgartner had instructed VanSteenwyk and the other employees to get off the seat and use their right legs to kick the front right locking lever to

engage the locking mechanism. Whether VanSteenwyk got off the seat to kick the locking lever was disputed. However, it was undisputed that while his right leg was extended, his left foot accidentally pushed the pedal on the floor of the skid loader.[1] By pushing this pedal, VanSteenwyk inadvertently lowered the hydraulic arm, which caused his leg to become pinned between the lip of the cab and the crosspiece of the arm. VanSteenwyk was able to disengage the hydraulics before any bones were broken but not before suffering a serious crush injury[2] that required hospitalization. A urinalysis at the hospital revealed marijuana in VanSteenwyk's system.

[¶7.]      Baumgartner contends that VanSteenwyk was impaired by the marijuana and that the impairment caused his injury. At the hearing before the Department, Baumgartner presented expert testimony to support his claim. Dr. Michael Evans, a board certified toxicologist, testified that based on the high level of THC detected in VanSteenwyk's urinalysis, he was significantly impaired at the time of the accident although a casual observer would not notice any signs of

---

1.    VanSteenwyk's size 13 shoe and the fact that the pedal took up a large area of the floor led the experts to believe that his left foot inadvertently hit the pedal.

2.    A crush injury is described as follows:

   A crush injury occurs when a body part is subjected to a high degree of force or pressure, usually after being squeezed between two heavy or immobile objects. Damage related to crush injury includes: laceration (open wound), fracture, bleeding, bruising, compartment syndrome, and others.

   Medline Plus Medical Encyclopedia, U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/000024.htm.

impairment. However, Dr. Evans indicated that he could not give an opinion as to whether VanSteenwyk's impairment caused the accident.

[¶8.] VanSteenwyk presented deposition testimony of Dr. John Vasiliades, an expert in clinical and forensic toxicology. Dr. Vasiliades disagreed with Dr. Evans' opinion that VanSteenwyk was impaired at the time of the accident. Dr. Vasiliades testified that he "would not expect any impairment from the effects of the drug 12 hours" after ingestion. He also testified that it was unlikely that VanSteenwyk suffered any impairment on the day of the accident because of the observations of VanSteenwyk's co-workers. All of VanSteenwyk's co-workers testified that on the morning of the accident VanSteenwyk was alert, coordinated, working hard, and performing a routine task he had performed many times.

[¶9.] The Department ruled that VanSteenwyk was not barred from receiving workers' compensation benefits because of his off-duty marijuana use. Baumgartner appeals and raises one issue:

## ISSUE

Whether the Department of Labor and the circuit court erred in finding that VanSteenwyk's illegal drug use was not a substantial factor in causing his injuries.

## STANDARD OF REVIEW

[¶10.] In workers' compensation cases our standard of review is established by SDCL 1-26-36. "Under SDCL 1-26-36, the applicable standard of review 'will vary depending on whether the issue is one of fact or one of law.'" Orth v. Stoebner & Permann. Const., Inc., 2006 SD 99, ¶27, 724 NW2d 586, 592 (quoting Tischler v. United Parcel Service, 1996 SD 98, ¶23, 552 NW2d 597, 602). "When the issue is a

question of fact, then the actions of the agency are judged by the clearly erroneous standard; and when the issue is a question of law, then the actions of the agency are fully reviewable [ *i.e.*, de novo]." *Id.* (internal quotations and citations omitted). "Mixed questions of fact and law are fully reviewable." *Id.* (quoting Brown v. Douglas Sch. Dist., 2002 SD 92, ¶9, 650 NW2d 264, 268).

[¶11.]      The applicable standard of review also varies depending on whether the Department was presented with live testimony or documentary evidence. When findings of fact are made based on live testimony, the clearly erroneous standard applies. *Id.* ¶28. "Deference and great weight are given to the hearing examiner on fact questions. 'When factual determinations are made on the basis of documentary evidence, however, we review the matter de novo, unhampered by the clearly erroneous rule.'" *Id.* (quoting *Brown*, 2002 SD 92, ¶9, 650 NW2d at 268).

## ANALYSIS

[¶12.]      Baumgartner argues that the Department erred when it failed to find that VanSteenwyk's willful misconduct in the form of off-duty illegal drug use was a substantial factor in causing the accident. SDCL 62-4-37 provides that injuries caused by willful misconduct by illegal use of Schedule I or Schedule II drugs are not compensable:

> No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including intentional self-inflicted injury, intoxication, illegal use of any schedule I or schedule II drug, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute. The burden of proof under this section shall be on the defendant employer.

Under the statute, the employer has the burden of proving by a preponderance of the evidence that the employee engaged in willful misconduct and that the employee's injuries were "due to the employee's willful misconduct." Goebel v. Warner Transportation, 2000 SD 79, ¶¶12-13, 612 NW2d 18, 22 (quoting SDCL 62-4-37); *see also* Holscher v. Valley Queen Cheese Factory, 2006 SD 35, ¶55, 713 NW2d 555, 570. "The words 'due to' in SDCL 67-4-37 refer to proximate cause." *Goebel*, 2000 SD 79, ¶13, 612 NW2d at 22. Consequently, an employee can be denied compensation under SDCL 62-4-37 if the employer can show by a preponderance of the evidence "that the employee's 'willful misconduct' was a proximate cause of the claimed injury." *Holscher*, 2006 SD 35, ¶55, 713 NW2d at 570. "An employee's willful misconduct will be the proximate cause of an injury when it 'is a cause that produces [the injury] in a natural and probable sequence and without which the [injury] would not have occurred.'" *Id.* ¶56 (quoting Estate of Gaspar v. Vogt, Brown & Merry, 2003 SD 126, ¶6, 670 NW2d 918, 921). The employer is not required to show that the employee's misconduct was the only cause, nor the last or nearest cause of the injury because an injury may have had several contributing or concurring causes, including willful misconduct. *Id.* Rather, under SDCL 62-4-37, an injury will be barred only when the employee's willful misconduct was a substantial factor in causing the injury. *Id.*

[¶13.] The Department assumed, without making any specific findings, that VanSteenwyk's marijuana use constituted willful misconduct. Therefore, the only issue before us is whether the Department erred when it concluded that

Baumgartner failed to show by a preponderance of the evidence that VanSteenwyk's injury was due to his use of marijuana the night before the accident.

*1. Proximate Cause Testimony*

[¶14.]      Baumgartner argues that he met his burden of proof through the expert testimony he offered at the administrative hearing and cites as error several findings of fact by the Department.  Because Baumgartner's experts testified live at the administrative hearing, the clearly erroneous standard is applicable. Baumgartner had the burden to show by a preponderance of the evidence that VanSteenwyk's willful misconduct proximately caused the accident, that is, Baumgartner had the burden of proving that VanSteenwyk's off-duty use of marijuana was a substantial factor in causing his injury.  *Holscher*, 2006 SD 35, ¶55, 713 NW2d at 570.  Baumgartner argues that the testimony of his experts, Dr. Evans and Dr. Alcorn, provided "abundant evidence – largely ignored by the Department – from which the Department might have properly inferred, deduced, or otherwise concluded that VanSteenwyk's illegal drug use was a substantial factor in causing his injury."

[¶15.]      Baumgartner argues that the Department placed unwarranted reliance on the absence of explicit testimony from Dr. Evans that VanSteenwyk's marijuana use was *a proximate cause* of his accident.  Dr. Evans offered the following observation in a written report prepared for trial:  "[T]he impairment effects produced by [VanSteenwyk's] use of Marijuana is a significant causative factor in workplace accidents such as Mr. Thomas E. VanSteenwyk['s] accident on April 30, 2004."  However, at the hearing, when Dr. Evans was specifically asked

whether VanSteenwyk's off-duty marijuana use played a role in the accident, he declined to offer an opinion, stating, "As a scientist, I would never claim that – first of all, as an accident reconstruction – that the marijuana use caused the accident. I'm not an accident reconstructionist, absolutely not. . . . No, I cannot tell you that the marijuana caused the accident." Based on this testimony, the Department made the following finding of fact:

> Dr. Evans candidly admitted that he could not say, by a preponderance of the evidence, that Claimant's marijuana use on April 29th was a proximate cause of his workplace injury on April 30th. He testified that he was "absolutely not" able to opine on the causation of the accident.

Baumgartner argues that the Department misinterpreted Dr. Evan's answer. Baumgartner contends that Dr. Evan's response did not address the legal issue of causation but rather indicated that he had solely assessed causation with the accuracy of scientific analysis that would be necessary to absolutely prove causation. If there was confusion, there was no attempt to clarify or explain Dr. Evans' proffered answer regarding the causation issue on re-direct.[3] Regardless, the Department was in the best position to interpret Dr. Evans' testimony and we

---

3. Baumgartner argues that Dr. Evans could not testify as to whether VanSteenwyk's use was the proximate cause of the injury because it is a legal term and he testified from a scientific perspective. However, in *Goebel v. Warner Transp.*, Dr. Evans testified that a truck-driver's on-duty snorting of methamphetamine and smoking of marijuana was a substantial factor in his injuries when he subsequently passed out behind the wheel and drove off the road. 2000 SD 79, ¶7, 612 NW2d at 20-21. The Court noted that Dr. Evans testified "that to a reasonable degree of scientific probability, Goebel's use of methamphetamine and marijuana impaired his driving ability, and that the impairment was a substantial factor in his accident." *Id.* The record in this case is void of similar testimony from Dr. Evans.

are not left with a definite and firm conviction that a mistake has been made. Thus, we cannot say that the Department's finding was clearly erroneous.

[¶16.]    Additionally, Baumgartner argues that Dr. Evans was not required to testify specifically that VanSteenwyk's drug use was *a proximate cause* of the accident. Baumgartner argues that in *Driscoll v. Great Plains Marketing Co.*, this Court held that proximate cause was established on the basis of testimony comparable in kind to that presented by Dr. Evans. 322 NW2d 478, 479 (SD 1982). The facts in *Driscoll* are distinguishable. In *Driscoll*, the Department denied the employee workers' compensation benefits because he drank five to six beers immediately before he was injured in a car accident on his way home from work. *Id.* at 478. The deputy sheriff, who investigated the accident, testified that claimant was impaired at the time of the accident and that claimant was one hundred times more likely to be involved in an accident than if he had nothing to drink. *Id.* at 479. This Court concluded that the Department's findings were not clearly erroneous. *Id.* at 480.

[¶17.]    Dr. Evans testified about the general effects of marijuana use and identified two categories of effects. The first is the "euphoric period" which may last three to five hours from when the user begins to smoke. The second category is the "impairment effects" period. Dr. Evans testified that one study showed the "impairment effects" period can last anywhere from 24 to 48 hours after ingesting the drug. Dr. Evans noted that a person may suffer from the following impairments when he is a chronic user of marijuana: diminishment of sequential thinking abilities, dullness in thought processing and activity, hand eye coordination,

sensory skills, slowing cognitive processing and reaction time during complex tasks. Based on VanSteenwyk's use of marijuana on the night prior to the accident and the large amount of THC detected in his urinalysis, Dr. Evans concluded that VanSteenwyk was impaired by the marijuana at the time of the accident. However, as previously noted, Dr. Evans testified that he could not conclude that VanSteenwyk's marijuana use or impairment caused the accident. Nevertheless, Baumgartner emphasizes the following statement from Dr. Evans as sufficient to show proximate cause: "[T]he impairment effects produced by [VanSteenwyk's] use of Marijuana is a significant causative factor in workplace accidents such as Mr. Thomas E. VanSteenwyk['s] accident on April 30, 2004." However, there was conflicting testimony as to whether VanSteenwyk was impaired at the time of the accident and the administrative law judge (ALJ) noted that Baumgartner's experts did not establish that "Claimant's impairment, if any, was a proximate cause of the accident."

[¶18.]      Dr. Alcorn, an expert in accident reconstruction, also testified on behalf of Baumgartner. Dr. Alcorn's written report indicated that VanSteenwyk's "accident was caused by the operator's failure to follow accepted safety procedures and by not locking the boom in the up position before attempting to lock the bucket to the mounting plate." However, at the hearing Baumgartner testified that he had not instructed his employees to use the locking pins when changing the attachments on the skid loader. Dr. Alcorn subsequently testified that he was "surprised" and "shocked" to learn that the locking pins were not being used by Baumgartner or the

other employees noting that the locking pins could have prevented VanSteenwyk's accident.

[¶19.]     Dr. Alcorn also offered the following opinion in a written report prepared for trial: "The operator exercised poor judgment in his operation of the machine. He also lacked coordination in the use of his legs and feet in addition to his slow response time once he realized he had made an error." However, at the hearing, when Dr. Alcorn was asked whether the accident would have been prevented if VanSteenwyk would have reacted quicker, Dr. Alcorn responded, "You know, it's really hard for me to say if he could have reacted quicker. It's just – I don't think I can say."

[¶20.]     Neither Dr. Alcorn nor Dr. Evans could offer any opinion as to what role, if any, VanSteenwyk's marijuana use played in the accident. We agree that Baumgartner was not required to present an expert's opinion that the claimant's willful misconduct *proximately caused* the injury in order to prevail. The ultimate decision on proximate cause is made by the finder of fact based on all the evidence, including expert and eye-witness testimony. However, the burden of proof lies with the employer to show by a preponderance of the evidence that an employee's willful misconduct proximately caused the injury. SDCL 62-4-37. The determination of proximate cause was within the province of the factfinder, here the ALJ. The ALJ concluded that neither Dr. Evans nor Dr. Alcorn's testimony met Baumgartner's burden of proof. Except for their testimony, there was no other evidence that VanSteenwyk was impaired the day of the injury. We give great deference and weight to the Department's findings under the clearly erroneous standard. *Orth*,

2006 SD 99, ¶28, 724 NW2d at 592. Based on all the evidence, we cannot say that the Department's findings on proximate cause are clearly erroneous. Thus, Baumgartner's arguments regarding proximate cause fail.[4]

*2. Credibility of Experts*

[¶21.] Baumgartner cites as error that the Department, as factfinder, failed to examine Dr. Evans' credibility or demeanor or provide any observations about, or evaluation of, his testimony. Baumgartner also contends that the Department erred when it failed to examine the credibility of Dr. Vasiliades pointing to Dr. Evans' opinion of Dr. Vasiliades that he was not a "competent, qualified toxicologist." We have consistently deferred to the ALJ when evaluating live testimony because of the opportunity to view the witnesses and be in the best position to determine the "credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence." Schaefer ex rel. S.S. v. Liechti, 2006 SD 19, ¶8, 711 NW2d 257, 260 (quoting Baun v. Estate of Kramlich, 2003 SD 89, ¶21, 667 NW2d 672, 677). Likewise, we have not required the ALJ to always make specific findings of fact regarding a witness' credibility or demeanor. Baumgartner cites no authority supporting this requirement. The failure to cite supporting authority waives the issue. Burch v. Bricker, 2006 SD 101, ¶20, 724 NW2d 604, 610. Even if the issue was not waived, the Department's decision was

---

4.  Baumgartner argues that the Department erred in determining that VanSteenwyk was operating the skid loader in the "exact fashion" that he had been instructed by Baumgartner. Baumgartner contends that VanSteenwyk was sitting while he extended his leg to kick the locking lever although Baumgartner had instructed him to stand. Nevertheless, this fact is not relevant to the ultimate issue in this case - whether VanSteenwyk's injury was due to his marijuana use.

based on Baumgartner's failure to meet his burden of proof and not on the credibility of the expert witnesses.

*3. Incorrect Legal Standard*

[¶22.]	Baumgartner also argues that the Department applied an incorrect legal standard.  Baumgartner contends that the following test articulated by the Department in its memorandum decision was incorrect:  "What Employer must demonstrate to prevail with its misconduct defense is that Claimant's intoxication was *the* proximate cause of the operator error that caused the injury."  (Emphasis added).  Baumgartner points out that the appropriate legal standard is that the employer must establish that the misconduct was "a" proximate cause of the operator error that caused the injury.  We agree that the proper legal standard is that the employer must show that the misconduct was a proximate cause of the injury.  *Holscher*, 2006 SD 35, ¶55, 713 NW2d at 570.

[¶23.]	Nevertheless, the record indicates that the Department used the correct standard.  We find only one instance in the record where the Department used the phrase "the proximate cause."  The remainder of the written decision, as well as the findings of fact and conclusions of law, refers to "a" proximate cause.  Furthermore, there is no indication that the Department's decision rested on a determination that VanSteenwyk's marijuana use was "the" proximate cause of the accident.  Specifically, the ALJ made the following conclusion of law:  "Claimant's off-duty marijuana use was not a substantial factor or *a* proximate cause of his workplace injury."  (Emphasis added).  Accordingly, Baumgartner's argument is without merit.

#24138

[¶24.]   We affirm the Department's determination that Baumgartner failed to show by a preponderance of the evidence that VanSteenwyk's injury was "due to" his willful misconduct.

[¶25.]   Affirmed.

[¶26.]   GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.